[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 30, 2005
THOMAS  K. KAHN
CLERK

No. 04-14589

_____

D. C. Docket No. 04-00016-CR-5-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee-
Cross-Appellant,

versus

CHAD CHRISTOPHER PYNE,

Defendant-Appellant-
Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(September 30, 2005)

Before BIRCH, HULL and BOWMAN[*], Circuit Judges.

_____

[*] Honorable Pasco M. Bowman, II, United States Circuit Judge for the Eighth Circuit, sitting by designation.

PER CURIAM:

Chad Christopher Pyne appeals his 200-month sentence for conspiracy to manufacture, distribute, and possess with intent to distribute more than 50 grams of methamphetamine and more than 500 grams of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii) and 846, and his concurrent 120-month sentence for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Relying on United States v. Booker, 543 U.S. _, 125 S. Ct. 738 (2005), Pyne argues that the district court erred when it sentenced him under a mandatory Sentencing Guidelines scheme.  The government cross-appeals the district court's grant of a downward departure under the Guidelines and its refusal to sentence Pyne as a career offender.  After review, we vacate Pyne's sentences and remand for resentencing.

## I.  BACKGROUND

### A.  Plea Colloquy

Pyne pled guilty to the above drug conspiracy and firearm charges. During the plea colloquy, the government filed a statement of facts, which Pyne admitted as true.  In that statement, the government explained that the Bay County, Florida, Sheriff's Office executed a state search warrant for the premises of Kim Brown at 2606 Beech Street, Panama City Beach, Florida, on November 19, 2003.  During

2

the execution of the warrant, the agents discovered chemicals and laboratory instruments in Brown's garage. Brown advised the agents that the items belonged to her boyfriend, Pyne. When Pyne arrived at the premises during the search, his person and vehicle were searched. The agents discovered: (1) approximately one gram of methamphetamine inside one of his pockets; (2) approximately1100 grams of methamphetamine oil in a backpack on the back seat of his vehicle; and (3) a Bryco Arms .380 pistol in a black case in the hatchback of his vehicle.

After Pyne was advised of his rights, he admitted to operating another laboratory at his residence, 8315 Gulf Pines Drive, Panama City Beach, Florida, and consented to its search. At his residence, the agents found approximately 98 containers of liquids, more than two grams of methamphetamine, and various chemicals and instruments used in the manufacture of methamphetamine. The government's statement of facts cited taped statements in which Pyne admitted that he: (1) had cooked approximately ten grams of methamphetamine almost every day at his residence for about a month and at another location for about four months; (2) owned the laboratories found both on Beech Street and on Gulf Pines Drive and the methamphetamine oil found in his vehicle; and (3) had obtained the .380 pistol about four months earlier. The statement of facts also indicated that Pyne had a prior felony state conviction for an attempted home invasion and that the pistol had

been manufactured outside Florida.

During the plea hearing, Pyne admitted that he had "bought the chemicals to make the drug[,] . . . made the drug and . . . sold it." He also admitted that he was aware that the pistol was "in the back of [his] car" and that he had a previous felony conviction. Pyne acknowledged that he understood that the Sentencing Guidelines applied and "that the district court w[ould] make the final determination of facts as to any sentencing issue." The district court then accepted Pyne's guilty plea.

## B. Presentence Investigation and Sentencing

The Presentence Investigation Report ("PSI") recommended a base offense level of 33.[1] The PSI also noted that the career offender provision, U.S.S.G. §4B1.1, applied because Pyne had two previous, unrelated felony convictions involving crimes of violence, specifically attempted home invasions. Career offender status increased Pyne's offense level from 33 to 37 and his criminal history category from IV to VI. See U.S.S.G. §4B1.1(b) . The PSI also recommended a three-point offense level reduction for acceptance of responsibility. See U.S.S.G. §3E1.1. With a total offense level of 34 and a criminal history category of VI,

---

[1]The relevant Guidelines are those in effect at the time of Pyne's sentencing hearing, unless a more lenient punishment would result under the Guidelines effective on the date of Pyne's offenses. 18 U.S.C. 3553(a)(4)(A); United States v. Wilson, 993 F.2d 214, 216 (11th Cir. 1993). The PSI does not mention which Guidelines version was used; however, because Pyne was sentenced on August 19, 2004, he should have been sentenced under the 2003 Guidelines. All Guidelines citations herein are to the 2003 Guidelines.

Pyne's Guidelines range was 262 to 327 months' imprisonment. Pyne filed no objections to the PSI but moved for a finding that the Guidelines were unconstitutional, based on <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531 (2004), and seeking to be sentenced without regard to the Guidelines.

At sentencing, the district court overruled Pyne's <u>Blakely</u> objection and found that the attempted home invasions were related, but that the career offender provision still applied because the second offense involved a crime of violence. The district court then effectively granted a downward departure from criminal history category level VI to category IV, finding Pyne's criminal history was overstated, as follows:

> Despite my finding of a career offender status in Mr. Pyne's case, I find that the sentence range of 262 to 327 months overrepresents Mr. Pyne's criminal history. . . . Mr. Pyne has several incidents of criminal history, but they do not rise to the level in my opinion to support a sentence in that guideline range. We have stolen property less than $100, disorderly conduct, misdemeanor, first one was a misdemeanor, attempted home invasion, and both of the attempted home invasions. . . involved Mr. Pyne entering into a residence that was owned by some family friend or someone that he was close to and knew and that no one was home during either incident. . . . And the first home invasion, he took $255 and a . . . bicycle, and the second he took $85 and a backpack. I can't find that this rises to the level to support a career offender sentence. . . .
>
> And I can't, in good conscience, sentence someone to even 262 months with that criminal history. So I am going to depart downward from the guideline range in this case, and I do so for those reasons. However, I am guided in the sentence that I am going to impose by the offense level and criminal history category that would apply if Mr.

5

Pyne was not found to be a career offender and that would be an offense level of 33 with a criminal history category of four, sentencing range of 188 to 235 months.

Although the government objected to the grant of a downward departure, the district court responded that it was "floored" that the attempted home invasion would qualify as a crime of violence for purposes of Pyne's criminal history and, when considering that crime and Pyne's "other criminal history, which consists of nothing but misdemeanors," the court could not "in good conscience sentence this man to 262 months, and [was] not going to do so."

The district court sentenced Pyne to concurrent sentences of 200 months' imprisonment for his drug conspiracy offense and 120 months' imprisonment for his firearms offense. The district court noted that it had "carefully considered the factors set out in 18 U.S.C. [§] 3553[(a)], including the applicable guidelines and policy statements issued by the Sentencing Commission." The district court stated that the imposed sentences would sufficiently punish Pyne for his "criminal conduct while also serving as a general and specific deterrent to others who might engage in similar-type conduct."

Pyne and the government appealed. On appeal, Pyne requests that we remand for resentencing, arguing that the district court erred by relying on the

Sentencing Guidelines because they were rendered unconstitutional by <u>Booker</u>.[2]

The government argues that any <u>Booker</u> error was harmless, but maintains that the district court erred by refusing to sentence Pyne as a career offender and by granting the downward departure from criminal history category VI to category IV.

## II.  STANDARD OF REVIEW

Because Pyne timely raised his <u>Blakely</u> objection in district court, we review his <u>Booker</u> challenge to his sentence <u>de novo</u>, reversing if the government fails to show that any error was harmless.  <u>See</u> <u>United States v. Paz</u>, 405 F.3d 946, 948 (11th Cir. 2005).

When reviewing a downward departure under the Sentencing Guidelines, we review factual findings for clear error and the application of the Guidelines to those facts <u>de novo</u>.  <u>United States v. Kapelushnik</u>, 306 F.3d 1090, 1093 (11th Cir. 2002). If there is a legal basis for the downward departure under the Guidelines, we generally do not review the district court's exercise of discretion in determining the extent of the departure.  <u>United States v. Head</u>, 178 F.3d 1205, 1206 n.3 (11th Cir. 1999).

## III.  DISCUSSION

---

[2] In <u>Booker</u>, the Supreme Court held that <u>Blakely</u> applies to the United States Sentencing Guidelines.  <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1297-98 (11th Cir.), <u>cert.</u> <u>denied</u>, 125 S. Ct. 2935 (2005).  Although Pyne initially argued that the district court erred in light of <u>Blakely</u>, he supplemented his argument citing <u>Booker</u>.

## A.  **Booker** Error

"Under Booker, there are two kinds of sentencing errors: one is constitutional and the other is statutory." United States v. Dacus, 408 F.3d 686, 688 (11th Cir. 2005) (per curiam).  The constitutional error occurs "where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, 125 S. Ct. 2935 (2005) (emphasis omitted).  The statutory error occurs when the district court sentences a defendant "under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment enhancement violation." United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

Pyne concedes that there has been no constitutional error in this case, but argues that the district court committed statutory Booker error warranting resentencing.  The government agrees both that there has been no constitutional error and that statutory Booker error did occur.  Thus, the only Booker issue is whether the government carried its burden to show that the Booker error was harmless.  Paz, 405 F.3d at 948.

A Booker statutory error is harmless only "if, viewing the proceedings in their entirety, a court determines that the error did not affect the sentence, or had but

8

very slight effect. If one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error." United States v. Mathenia, 409 F.3d 1289, 1292 (11th Cir. 2005) (per curiam) (quotation marks, citations and punctuation omitted). Here, the district court expressed great concern about the Guidelines' mandatory requirement that it sentence Pyne with the range of 262-327 months. In fact, the district court fashioned a unique downward departure -- one not authorized by the Guidelines -- in an effort to circumvent the mandatory Guidelines range of 262-327 months. It is abundantly clear from the sentencing record that the district court would have considered another sentence but for the mandatory nature of the Guidelines. Thus, the government has not shown that the Booker error was harmless, and we therefore vacate Pyne's sentence and remand for resentencing.

**B. Guidelines Calculations on Remand**

Following Booker, district courts, while not bound by the Sentencing Guidelines, must continue to consult the provisions of the Sentencing Guidelines and consider them in sentencing. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005); United States v. Jordi, 418 F.3d 1212, 1215 (11th Cir. 2005). "This consultation requirement, at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines." Crawford, 407 F.3d

9

at 1178. Further, "[a] misinterpretation of the Guidelines by a district court effectively means that the district court has not properly consulted the Guidelines." Id. (quotation marks, citations and punctuation omitted). "[A]pplication of the guidelines is not complete until the departures, if any, that are warranted are appropriately considered. . . .If the district court failed in [correctly applying the law in determining the applicability of the departure], it by necessity failed to properly consider the guidelines." Jordi, 418 F.3d at 1215. Given that the government has cross-appealed the district court's downward departure and its failure to consider Pyne as a career offender, we discuss these two Guidelines issues in order to allow the district court to calculate properly the Guidelines range on remand.

First, we address the downward departure. The government has shown that there was no legally permissible basis in the Guidelines for the district court's downward departure from criminal history category VI to category IV. We recognize that the Sentencing Guidelines allow for a downward departure where "the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history." U.S.S.G. §4A1.3(b)(1).[3] However, where the defendant is a career offender, such departure may not exceed

---

[3]U.S.S.G. §4A1.3(b)(1) states: "STANDARD FOR DOWNWARD DEPARTURE.—If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."

one criminal history category. U.S.S.G. § 4A1.3(b)(3)(A).[4] Moreover, the district court erred by basing its §4A1.3(b)(1) downward departure at least in part on the underlying facts of Pyne's prior convictions, rather than on their timing or pattern. See United States v. Rucker, 171 F.3d 1359, 1363 (11th Cir. 1999) (district court may not base a downward departure on the court's view that defendant's prior convictions involved relatively minor crimes).

Second, we address Pyne's classification as a career offender. Under U.S.S.G. §4B1.1, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." For purposes of determining career offender status, a defendant has "two prior felony convictions" if (1) the defendant's prior convictions were for "either a crime of violence or a controlled substance offense," and (2) "the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c)." U.S.S.G. §4B1.2(c) (emphasis added).

---

[4]U.S.S.G. §4A1.3(b)(3)(A) states: "LIMITATION ON EXTENT OF DOWNWARD DEPARTURE FOR CAREER OFFENDER.—The extent of a downward departure under this subsection for a career offender within the meaning of §4B1.1 (Career Offender) may not exceed one criminal history category."

11

Thus, the career offender provision in §4B1.2(c) refers back to counting under §4A1.1, which governs assessment of points to determine a defendant's criminal history category. Only unrelated convictions are counted separately under §4A1.1(a), (b), or (c). U.S.S.G. §4A1.2(a)(2). Therefore, to qualify for career offender status, Pyne's two prior convictions must be unrelated. See United States v. Duty, 303 F.3d 1240, 1241 (11th Cir. 2002) ("To qualify as two prior felony convictions [for the purpose of career offender status], the prior offenses must be unrelated"); United States v. Vasquez, 389 F.3d 65, 73 (2d Cir. 2004) ("'related' felony convictions count as one for purposes of the career offender guideline"); United States v. Martins, 413 F.3d 139, 151 (1st Cir. 2005) (same).

Pyne was classified as a career offender based on his two prior convictions for attempted home invasion, offenses that the original PSI classified as unrelated. Although these two felonies are "crimes of violence" for purposes of the Guidelines, see U.S.S.G. §4B1.2(a)(2), there is a question in this case as to whether the convictions are related and thus his sentences on them are not counted separately under §4A1.1(a), (b) or (c), but rather his second conviction is counted under §4A1.1(f). [5]

_____

[5] "Prior sentences imposed in related cases are to be treated as one sentence for purposes of §4A1.1(a), (b), and (c)." U.S.S.G. §4A1.2(a)(2). Where two violent felonies are related, the first is counted under §4A1.1(a), (b), or (c), while the second is counted under §4A1.1(f). See also U.S.S.G. § 4B1.2, cmt. n. 3 ("The provisions of §4A1.2 (Definitions and Instructions for Computing

12

At sentencing, Pyne argued that his two prior convictions were related for the purpose of computing criminal history points because the convictions were consolidated for sentencing. The PSI indicates that (1) Pyne's two attempted home invasions occurred on August 15, 1996, and August 21, 1996, respectively; (2) Pyne was arrested for these offenses on August 22, 1996; and (3) the sentencing hearing for both offenses was held on October 16, 1996. According to the Guidelines, in the context of computing criminal history points, "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest. . . . Otherwise, prior sentences are considered related if they resulted from offenses that . . . were consolidated for trial or sentencing." U.S.S.G. §4A1.2, cmt. n. 3.

The government argued that despite the consolidation of Pyne's two home invasion felonies for sentencing, the offenses were separated by an intervening arrest and should therefore be classified as unrelated convictions. The government's argument was based on the PSI's statement that Pyne had been arrested in between his commission of the first and second attempted home invasions. According to the PSI, on August 20, 1996, police were dispatched to

---

Criminal History) are applicable to the counting of convictions under §4B1.1 [i.e., the career offender provision].").

13

break up a fight in which Pyne was involved.[6]  On October 22, 1996, Pyne pled

guilty to a disorderly conduct charge arising from the fight and served ten days in

county jail.  Because the fight occurred after Pyne's August 15, 1996 offense but

before his August 21, 1996 offense, the government argued that the two offenses

were "separated by an intervening arrest" and were therefore not related.

Although the PSI lists August 20, 1996 as the "date of arrest" for Pyne's

disorderly conduct citation, the Probation Officer orally clarified at the sentencing

hearing that Pyne was never arrested for the August 20, 1996 disorderly conduct

incident; he was merely cited.  Based on this testimony, the district court found that

the disorderly conduct citation did not constitute an "intervening arrest" and that the

two attempted home invasions were therefore related.

Because Pyne's two prior convictions were related, the district court then

reduced Pyne's criminal history points from eight to seven points.[7]  The Guidelines

problem as to Pyne's career offender status arises because the court's holding that

---

[6]In one place, the PSI states incorrectly that the incident occurred on April 20, 1996; the remainder of the PSI and the sentencing hearing make clear that August 20, 1996 is the correct date.

[7] The district court explained that the disorderly conduct citation "is not an intervening event for purposes of 4A1.1(f) . . . however, because the second [attempted home invasion] is – or does constitute a crime of violence, it will be scorable with one [criminal history] point as opposed to the two that were given."   Based on this change, the district court assessed Pyne with seven criminal history points, as opposed to the eight originally assessed by the PSI. See also  U.S.S.G.  §4A1.1(f) (assigning one criminal history point for a crime of violence related to another crime already scored).

14

Pyne's prior convictions were "related" for purposes of calculating his criminal history points also potentially impacts his career offender status. The district court appears to have believed that whether or not the attempted home invasions were "related" affected only the calculation of Pyne's criminal history points and not the determination of his career offender status.

We say potentially because there is some confusion in the record regarding when or whether Pyne was arrested for the disorderly conduct offense or the first home invasion offense. This confusion makes it unclear whether Pyne's attempted home invasions were separated by an intervening arrest and therefore whether the offenses were unrelated or related. There is also uncertainty as to whether any of Pyne's other convictions than the attempted home invasions would qualify Pyne for career offender status. Because there is ambiguity in the record concerning the circumstances of Pyne's prior convictions and concerning the district court's relevant findings, we conclude that the career offender issue should be addressed by the district court in the first instance at the new sentencing hearing. Both parties should be given the opportunity on remand to present anew evidence and briefs relevant to whether Pyne has two prior convictions that qualify him for career offender status.

## IV. CONCLUSION

In summary, because the district court committed statutory <u>Booker</u> error and the government did not show that error to be harmless, we vacate Pyne's sentence in its entirety and remand for resentencing under an advisory Guidelines regime. On remand the district court shall determine whether Pyne is a career offender and shall properly calculate the Guidelines range in accordance with that finding. The district court shall then sentence Pyne under an advisory Guidelines regime, considering both the properly calculated Guidelines range and other statutorily permissible sentencing considerations. <u>See</u> 18 U.S.C. § 3553(a); <u>Booker</u>, 125 S.Ct. at 757.[8]

**VACATED and REMANDED.**

---

[8]We do not decide the reasonableness of any particular sentence in this case, whether falling within a properly calculated Guidelines range or not. Further, nothing herein should be construed as indicating whether Pyne is or is not a career offender; that issue should be reviewed <u>ab initio</u> by the district court.