**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

ISRAEL LEAL-FELIX,
          *Defendant-Appellant.*

No. 09-50426

D.C. No.
5:09-cr-00067-
VAP-1

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
June 22, 2011—Pasadena, California

Filed November 30, 2011

Before: Alex Kozinski, Chief Judge, Mary M. Schroeder,
Susan P. Graber, M. Margaret McKeown,
Kim McLane Wardlaw, William A. Fletcher,
Richard A. Paez, Johnnie B. Rawlinson, Milan D. Smith, Jr.,
Sandra S. Ikuta, and N. Randy Smith, Circuit Judges.

Opinion by Judge Judge N. Randy Smith;
Concurrence by Judge McKeown;
Dissent by Judge Rawlinson

20497

**COUNSEL**

Michael Tanaka, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Michael J. Raphael, Assistant United States Attorney, Los Angeles, California; and Bryan F. Boutwell, Special Assistant United States Attorney, Riverside, California, for the plaintiff-appellee.

---

**OPINION**

N.R. SMITH, Circuit Judge:

In this appeal, we are asked to interpret the United States Sentencing Guidelines § 4A1.2(a)(2). The United States Sentencing Commission (the "Commission") has authority to define the terms in the Sentencing Guidelines. *See* 28 U.S.C. § 994(p). However, until it does, we consider the context and purpose of the Sentencing Guidelines as a whole in interpreting them. *Cf. Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). In Sentencing Guidelines § 4A1.2(a)(2), we interpret the term "arrest" to require that the individual be formally arrested; the mere issuance of a citation, even if considered an arrest under state law, is insufficient. Therefore, we vacate the sentence imposed by the district court and remand for resentencing.

**FACTS**

At all times relevant to this case, Israel Leal-Felix was a citizen of Mexico and an alien, as defined by United States immigration law. On April 20, 2009, Leal-Felix was charged with violating 8 U.S.C. § 1326(a) and § 1326(b)(2), because he was found in the United States after having been removed or deported from the United States and without permission to

reapply for admission following removal or deportation. In the charging information, the Government alleged that the previous removal or deportation occurred after a conviction for an aggravated felony.

Leal-Felix entered into a binding plea agreement with the Government. The plea agreement required that, in exchange for the entry of a guilty plea by Leal-Felix, the Government would recommend that he be sentenced at the lower end of the applicable Guidelines range, as determined by a total offense level of nine. Both parties waived their right to appeal the sentence, provided that the district court imposed a sentence in accordance with the plea agreement. However, Leal-Felix reserved the right to appeal the calculation of his criminal history category.

Relevant to this appeal, Leal-Felix's criminal history included two citations for driving with a suspended license. The citations were received on November 17, 1998, and November 19, 1998 (the November citations).[1] Leal-Felix was sentenced for both citations on January 19, 2000, receiving concurrent sentences of 36 months' probation on the condition that he serve 180 days in the county jail.

On June 8, 2009, Leal-Felix entered his plea of guilty in the present case, pursuant to the plea agreement. The PSR calculated that Leal-Felix was in criminal history category VI with 14 criminal history points, including two points for each of the November citations. Leal-Felix objected to counting the second citation separately under Sentencing Guidelines § 4A1.2(a)(2), because the two violations were sentenced on the same day and were not separated by an intervening arrest.

At the sentencing hearing, Leal-Felix argued that the second violation should not be counted in the criminal history,

---

[1]The Presentence Report (PSR) originally showed that both citations were received on November 17, 1998.

because he had not been arrested for the first violation, but only cited. The district court disagreed. The court held that a citation for a traffic violation was the same as an arrest under § 4A1.2(a)(2), meaning that the first citation was "an intervening arrest." Using this interpretation, the court calculated that Leal-Felix had 13 criminal history points, placing him in criminal history category VI. In accordance with the plea agreement, the district court sentenced Leal-Felix to 21 months (the low end of the Guidelines range for category VI) on August 10, 2009.

## PROCEDURAL HISTORY

Leal-Felix timely appealed his sentence on August 25, 2009. A divided panel affirmed on November 1, 2010. The majority concluded: "We agree with the Seventh Circuit in [*United States v. Morgan*, 354 F.3d 621 (7th Cir. 2003)] that treatment of Leal-Felix's traffic violations as arrests comports with the Sentencing Guidelines." *United States v. Leal-Felix*, 625 F.3d 1148, 1151 (9th Cir. 2010). We granted Leal-Felix's petition for review en banc on April 19, 2011. *United States v. Leal-Felix*, 641 F.3d 1141 (9th Cir. 2011).

## ANALYSIS

**[1]** The applicable Guidelines sentencing range is determined by both the calculated offense level and the criminal history category. Prior sentences are counted in determining the criminal history category, but may be counted separately or as a single sentence, depending (in part) on whether there was an intervening arrest. U.S.S.G. § 4A1.2(a)(2).

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first

offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence. *See also* § 4A1.1(e).

*Id.* The definition of an "intervening arrest" is the subject of our interpretation here. Under this Guideline, if a citation is equivalent to an arrest, then Leal-Felix's two citations for driving with a suspended license must be counted separately. Counting each citation as an arrest, and adding two points for each, would place him in criminal history category VI, with a Guidelines range of 21-27 months. However, if a citation is not an intervening arrest, his citations would be counted together and he would be included in criminal history category V, with a Guidelines range of 18-24 months.

"We review *de novo* the district court's interpretation of the Sentencing Guidelines (because it is a pure question of law)." *United States v. Laurienti*, 611 F.3d 530, 551 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 969 (2011).

**[2]** The Sentencing Guidelines do not define the term "arrest" in the context of § 4A1.2(a)(2). Although the Commission may define any terms used in the Guidelines, *see United States v. LaBonte*, 520 U.S. 751, 754-55 (1997), it has not defined "arrest." Because the Commission has not defined the term, we must interpret this provision in order to resolve the present appeal. If, after applying the normal rules of statutory interpretation, the Sentencing Guideline is still ambiguous, the rule of lenity requires us to interpret the Guideline in favor of Leal-Felix. *See DePierre v. United States*, 131 S. Ct. 2225, 2237 (2011).

**[3]** To begin, we may not rely on California law to define an arrest. Although California may consider a citation the

equivalent of an arrest, *see* Cal. Penal Code § 4030, we do not look to state law to determine the meaning of the Sentencing Guidelines. "[A] federal sentencing enhancement provision . . . is interpreted according to a uniform, national definition, not dependent upon the vagaries of state law." *United States v. Martinez*, 232 F.3d 728, 732 (9th Cir. 2000) (citing *Taylor v. United States*, 495 U.S. 575, 591-92 (1990)). In *Taylor*, the Supreme Court refused to define predicate offenses using state law, holding that the same conduct could not result in a sentencing enhancement in California, but not in Michigan, depending solely on how the state defined the offense. 495 U.S. at 590-91. Similarly, in this case, what constitutes an arrest cannot vary between states based on state law, but must have "a uniform, national definition." *See Martinez*, 232 F.3d at 732.

   **[4]** For the purpose of the Sentencing Guidelines, an arrest is a "formal arrest." A formal arrest may be indicated by informing the suspect that he is under arrest,[2] transporting the suspect to the police station,[3] and/or booking the suspect into jail.[4] Limiting "arrest" to a formal arrest (rather than a mere citation) is consistent with common usage, case law,[5] and the context and purposes of the Sentencing Guidelines.

---

   [2]*See Brendlin v. California*, 551 U.S. 249, 252 (2007) (one suspect was declared "under arrest;" another was "formally arrested" after a patdown revealed syringes and suspected drug paraphernalia).

   [3]*United States v. Robinson*, 414 U.S. 218, 234-35 (1973) (formal arrest involves more danger to police because it involves "taking . . . a suspect into custody and transporting him to the police station").

   [4]*Atwater v. City of Lago Vista*, 532 U.S. 318, 324 (2001). In this case, Atwater was handcuffed, placed in the squad car and taken to the local police station. *Id.* She was then photographed, placed in a jail cell, and eventually taken before a magistrate and released on bond. *Id.*

   [5]The dissent relies on *Dunaway v. New York*, 442 U.S. 200, 212 (1979), to argue that Supreme Court precedent does not support our definition of a formal arrest. Dissenting Op. 20516. The dissent observes that in *Dunaway*, the Court "cautioned against relying on 'technical arrests' to invoke constitutional protections." Dissenting Op. 20516 (quoting

**[5]** Arrest is commonly used as it is defined: "the taking or detainment (of a person) in custody by authority of law; legal restraint of the person; custody; imprisonment." Webster's Third New International Dictionary 121 (unabridged ed., 1993); *accord* Black's Law Dictionary 109-10 (6th ed. 1990) ("Taking, under real or assumed authority, custody of another . . . ."). While this common understanding creates a clear and usable definition, "[t]he definition of words in isolation . . . is not necessarily controlling in statutory construction." *Dolan*, 546 U.S. at 486. "Interpretation of a word or phrase [in a statute] depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Id.*

---

*Dunaway,* 442 U.S. at 213). However, *Dunaway* dealt with a defendant who had been seized by the police, transported to a police station in a police car, and placed in an interrogation room where he was subjected to investigatory questioning after being given Miranda warnings. *Dunaway*, 442 U.S. at 203, 212. This situation constituted a quintessential formal arrest under our definition. Indeed, the Court in *Dunaway* noted that "the detention of petitioner was in important respects indistinguishable from a traditional arrest." *Id.* at 212. We agree that a formal arrest may take place whether or not a police officer "technically characterize[s his actions] as an arrest." *Id.* at 214.

As we have explained, a formal arrest also includes situations in which the suspect has been transported to the police station or booked into jail. These are traditional hallmarks of arrest that have historically triggered heightened constitutional concern and—more importantly for our case— are more likely to trigger an awareness that an arrest is taking place. This awareness then suggests higher culpability should the same defendant engage in another crime shortly thereafter.

The Court in *Dunaway* made a clear distinction between the seizure that occurs during a "formal arrest" and the "substantially less intrusive" seizure that takes place when a police officer makes a traffic stop. *Id.* at 210. In reference to a *Terry*-type stop, the Court explained that "the intrusion involved in a 'stop and frisk' was so much less severe than that involved in traditional 'arrests.' " *Id.* at 209. Thus, contrary to the dissent's arguments, *Dunaway* squarely supports the majority's position and illustrates that a traffic-stop seizure does not constitute a formal arrest.

There is little precedent in case law addressing § 4A1.2(a)(2) to assist us in making this decision. The Seventh Circuit's opinion in *Morgan* is the only other circuit opinion that has defined arrest in this context. The Seventh Circuit held that "[a] traffic stop is an 'arrest' in federal parlance." *Morgan*, 354 F.3d at 624 (citing *Whren v. United States*, 517 U.S. 806 (1996)). However, *Morgan*'s reasoning seems in error and rests on questionable authority. *Morgan*'s reliance on *Whren* and *Atwater* is misplaced. *Morgan* fails to cite where in *Whren* it establishes that a traffic stop is an "arrest," likely because *Whren* does not address whether a traffic stop constitutes an arrest at all; rather, the opinion held that a traffic stop is a "seizure" and therefore must be reasonable. 517 U.S. at 809-10.[6]

*Atwater* contradicts *Morgan*'s position that a citation is an arrest. In *Atwater*, there was no question that Atwater was arrested: she was not only handcuffed, she was taken into custody and booked into jail. 532 U.S. at 324. Although *Atwater* uses the terms "arrest" and "custodial arrest,"[7] it does not consider whether a citation is either form of arrest. Instead, it clearly differentiates between *any* type of arrest and a citation.

---

[6]The dissent argues that the Court in *Whren* described the traffic stop as "a traffic-violation arrest." Dissenting Op. 20514-15 (citing *Whren*, 517 U.S. at 813). But there, the court was merely describing the arrest that occurred some time *after* the traffic stop, and not the traffic stop itself. *See Whren,* 517 U.S. at 808-09, 812 (comparing the facts of "a case which, like this one, involved a traffic stop as the *prelude* to a plain-view sighting and arrest" (emphasis added)). Indeed, in the case that *Whren* cites when discussing a traffic violation-arrest, the arrest at issue was not the traffic stop itself. Rather, it was a formal arrest occurring immediately after the stop, when the officer explicitly "informed [the defendant] that he was under arrest for 'operating after revocation and obtaining a permit by misrepresentation.' " *Robinson*, 414 U.S. at 220-21.

[7]These terms are frequently used interchangeably, without any apparent distinction. *See, e.g.*, *Robinson*, 414 U.S. at 235 ("It is the fact of the *lawful arrest* which establishes the authority to search, and we hold that in the case of a *lawful custodial arrest* a full search [is reasonable]." (emphasis added)).

*See id.* at 353 n.23 (noting a police department revised its policy "to provide for citation *in lieu of* custodial arrest" (emphasis added)).

**[6]** Contrary to *Morgan*'s reasoning that it is the act of apprehension that identifies a recidivist worthy of additional punishment, 354 F.3d at 623-24, *Atwater* aptly noted that an arrest has a stronger deterrent effect than a citation, 532 U.S. at 349 (contrasting the likelihood of reoffending of a chronic speeder who is arrested versus one released with "a citation in his pocket"). Thus, one who is subjected only to a momentary detention and later reoffends is less culpable than the defendant who is subjected to the greater deterrence of an arrest,[8] yet still reoffends. Imposing a higher sentence on the defendant who was arrested, rather than merely cited, is therefore consistent with the Sentencing Guidelines' goal of imposing a just punishment.

Moreover, Supreme Court case law provides ample support in other contexts for distinguishing an arrest from a citation. In *Berkemer v. McCarty*, 468 U.S. 420 (1984), the Court clarified that custody is the distinguishing characteristic of an arrest. In *Berkemer*, the driver of a car was stopped, questioned, and asked to perform a field sobriety test. *Id.* at 423. Thereafter, the police officer placed Berkemer under arrest and transported him to jail, where he was again questioned. *Id.* at 423-24. The Court concluded that Berkemer's statements prior to his arrest were not subject to the exclusionary rule for violating *Miranda*, because he was not in custody at the time. *Id.* at 442. During a traffic stop, a motorist expects "that he may . . . be given a citation, but . . . most likely will

---

[8]For this reason, we limit our definition of arrest for Guidelines' purposes to a "formal arrest." Although a defendant may be in custody for *Miranda* purposes prior to a formal arrest, here, the key inquiry is not whether a reasonable person would have felt free to leave, *see Thompson v. Keohane*, 516 U.S. 99, 112 (1995), but whether the defendant *knew* he was under arrest.

be allowed to continue on his way," *id.* at 437, but someone under arrest has no such expectation. The Court repeatedly drew a parallel between "arrest" and "being in custody" in holding that "[t]here can be no question that respondent was 'in custody' at least as of the moment he was formally placed under arrest." *Id.* at 434. While a defendant may be in custody prior to a formal arrest, *see id.* at 440, an arrest clearly constitutes placing the defendant in custody. The Court further underscored the distinction between a citation and an arrest in *Knowles v. Iowa*, 525 U.S. 113, 114 (1998), noting that the police stopped Knowles, "but issued him a citation *rather than* arresting him." (emphasis added).

[7] The Sentencing Guidelines as a whole also suggest that citations are not arrests. The purpose of the criminal history score is to approximate "the seriousness of the defendant's criminal history and the danger that the defendant presents to the public." U.S.S.G. § 4A1.2 cmt. n.3. A citation, where the defendant is not taken into custody, would ordinarily mean both that the defendant presents little danger to the public and that the crime is less serious. *See Berkemer*, 468 U.S. at 437 n.26 (noting that "no State requires that a detained motorist be arrested unless he is accused of a specified serious crime."). The Sentencing Guidelines generally exclude from the criminal history calculation sentences imposed for driving with a suspended license, further indicating the Commission's judgment that such offenses are relatively minor. U.S.S.G. § 4A1.2(c)(1).[9]

---

[9]Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted except as follows:

> (1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:
> . . . Driving without a license or with a revoked or suspended license . . . .

U.S.S.G. § 4A1.2(c).

As indicated, the context of the Sentencing Guidelines provides support for our interpretation. However, if we interpreted "arrest" within the meaning of Sentencing Guidelines to include a citation (as suggested by the dissent), then "arrest" would be tantamount to being charged with an offense. *See* Black's Law Dictionary 277 (9th ed. 2009) (defining "citation" as "[a] police-issued order to appear before a judge on a given date to defend against a stated charge"). If we substitute the word "charge" for "arrest" in § 4A1.2(a)(2), then every offense becomes an "intervening arrest." *See* Black's Law Dictionary 265 (9th ed. 2009) (defining "charge" as "to accuse (a person) of an offense"). If this were the case, it would render the last two sentences of § 4A1.2(a)(2) meaningless, because there would never be a situation in which there was no intervening arrest. Such an interpretation would violate a fundamental rule of statutory construction. *See United States v. Ramirez-Sanchez*, 338 F.3d 977, 979 (9th Cir. 2003) (reasoning that the Sentencing Guidelines should not be read in such a way that would render part of the Guidelines meaningless).

Federal sentencing standards, and the Guidelines themselves, require that a defendant's sentence and criminal history not be overstated. *See* 18 U.S.C. § 3553(a) (requiring courts to impose "a sentence sufficient, but not greater than necessary" to effect the goals of sentencing); *United States v. Cruz-Gramajo*, 570 F.3d 1162, 1170 (9th Cir.) (noting that § 4A1.2 ensures "that a defendant's criminal history is not overstated"), *cert. denied*, 103 S. Ct. 646 (2009). When the criminal history score underrepresents the danger the defendant poses or the seriousness of the crimes, the Sentencing Guidelines permit an upward departure. U.S.S.G. § 4A1.3(a)(1); *see also* § 4A1.2 cmt. n.3. This provision further supports defining arrest narrowly, as it permits the district court to use its discretion to apply an upward departure when warranted, rather than considering all citations to be arrests. Finally, Sentencing Guideline § 4A1.2(c)(1) includes "resist-

ing arrest" as an offense. But one cannot "resist" a citation, indicating that the two terms are not synonymous.

**[8]** Even if the above-cited cases and Guideline provisions did not warrant differentiating between a citation and an arrest, the rule of lenity produces the same result. If neither the context and purpose of the Sentencing Guidelines nor Supreme Court precedent clarifies the meaning of "arrest," it must be interpreted in Leal-Felix's favor—that is, to exclude citations. *See DePierre*, 131 S. Ct. at 2237. Therefore, under either the rule of lenity or Supreme Court precedent, Leal-Felix's November citations should not be considered arrests for the purpose of calculating his criminal history score.

## Conclusion

**[9]** Nothing in the record suggests Leal-Felix was ever formally arrested for driving with a suspended license. He was not told he was "under arrest," he was not transported to the police station, and he was not booked into jail. Absent one of these hallmarks of a formal arrest, the district court erred in finding that he had been "arrested" for purposes of the Sentencing Guidelines. Therefore, his sentence is vacated. The case is remanded for resentencing in accordance with this opinion.

**VACATED and REMANDED.**

---

McKEOWN, Circuit Judge, joined by KOZINSKI, Chief Judge, and GRABER and WARDLAW, Circuit Judges, concurring:

I join the majority's opinion, but write separately to highlight the most compelling reason for concluding that a traffic citation is not an arrest for the purposes of the Sentencing Guidelines: the common understanding of the term arrest does

not include being pulled over and ticketed for a traffic violation. It is a bedrock principle of statutory construction that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). I am confident that an average citizen—with or without a law degree—would not believe he had been arrested if pulled over, briefly detained and issued a traffic ticket. Indeed, if a traffic citation constituted an arrest in ordinary parlance, then aspiring police officers and prison guards might have a lot more to disclose on their job applications.[1] Young drivers would need to be more concerned about getting into college,[2] and those filling out employment applications,[3] background checks,[4] visa applications,[5] and adoption papers[6] would need to employ an entirely different "truth-o-meter" than commonly understood. It seems unlikely, however, that police departments, prisons, colleges, government agencies and adoption organizations mean—or are even concerned about—speeding tickets when they ask if

[1]*See* San Diego Police Department, Personal History Statement, http://www.sandiego.gov/police/recruiting/pdf/phs.pdf (Question 41); State of California, Department of Corrections and Rehabilitation, Correctional Officer Supplemental Application, http://www.cdcr.ca.gov/career_opportunities/por/docs/CO%20Supplemental%20Application%209_20_10.pdf (Question 27).

[2]*See* Santa Fe College, Office of the Registrar Disciplinary Disclosure, http://dept.sfcollege.edu/records/content/docs/disciplinaryform.pdf.

[3]Jenna Greene, *From Jail to Jobless: Background Checks Draw Scrutiny*, The National Law Journal, Aug. 8, 2011, http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202509696653&From_jail_to_jobless (noting that Census Bureau required all applicants to provide arrest history and disqualified one applicant due to an arrest for a minor infraction).

[4]*See* Office of Personnel Management, Questionnaire for National Security Positions, http://www.opm.gov/forms/pdf_fill/sf86.pdf (question 22b).

[5]*See* Embassy of the Russian Federation to the United States of America, Visa Application, http://www.russianembassy.org/ Embassy_eng/Consulate/AppFormVisa_USA.pdf (question 33).

[6]Across the World Adoptions, Application, http://atwakids.org/atwa-application.pdf (page 3).

applicants have ever been arrested. In other words, treating an ordinary traffic ticket as an arrest defies our common experience and would be a paradigmatic shift.

It is true that most traffic stops involve a brief period of detention while the officer checks the driver's credentials and issues the ticket. But just as we would not say that an undersized fish is illegally in a fisherman's "custody" during the brief period between being caught and thrown back into the river, we would not claim that a detained driver is in police custody while waiting to receive a ticket. As the majority points out, the Supreme Court differentiates between a traffic stop and custody. *See Berkemer v. McCarty*, 468 U.S. 420, 437 n.26 (1984) ("State laws governing when a motorist detained pursuant to a traffic stop may or must be issued a citation *instead of* taken into custody vary significantly.") (emphasis added); *Knowles v. Iowa*, 525 U.S. 113, 114 (1998) ("An Iowa police officer stopped petitioner Knowles for speeding, but *issued him a citation rather than arresting him*.") (emphasis added).

In distinguishing a traffic stop from an arrest in *Berkemer*, the Court relied on an ordinary "motorist's expectations" when being pulled over, namely "that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration . . . but that in the end he most likely will be allowed to continue on his way." *Berkemer*, 468 U.S. at 437. The ordinary person's expectations when being taken into police custody, on the other hand, include hearing phrases like "you're under arrest" or "you'll need to come to the station" and perhaps being handcuffed and spending some time in the back of a squad car, if not in jail. That brief, embarrassing moment when a driver is stopped and given a ticket for speeding or driving with a broken tail light surely is not perceived as an arrest. Accordingly, I have no trouble concluding that the average driver in the United States does not believe he's in custody when he is pulled over and asked for his license, and the "or-

dinary, contemporary, common meaning" of the term arrest does not include a traffic citation.

---

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent from the majority opinion which, in my view, improperly imports Fourth Amendment analysis into calculation of a sentence under the Sentencing Guidelines, and unnecessarily creates a circuit split.

I agree with the majority that the term arrest as it is commonly used denotes taking or detaining an individual into custody by authority of law. I do not agree that the concept of custody for the purpose of criminal history calculation is co-extensive with a formal arrest that includes *Miranda* warnings, handcuffs and a trip to the police station.

It is important to remember that we are considering the definition of arrest for the purpose of assessing recidivism as part of the criminal history calculation. We are not assessing whether a Fourth Amendment violation occurred, whether *Miranda* warnings were required, or whether some different constitutional right was triggered. There is nothing new or unusual about recognizing that the process of imposing a sentence does not invoke the same protections as those procedures governed by various provisions of the United States Constitution. Indeed, we have routinely eschewed constitutional protection for various aspects of the sentencing process. *See, e.g., United States v. Mercado*, 474 F.3d 654, 656-57 (9th Cir. 2007) (holding that a sentencing court's consideration of acquitted conduct did not violate the Constitution); *United States v. Barragan-Espinoza*, 350 F.3d 978, 983 (9th Cir. 2003) (rejecting a constitutional challenge to the consideration of uncharged conduct in applying a sentencing enhancement); *United States v. Vanderwerfhorst*, 576 F.3d 929, 935 (9th Cir. 2009) ("A sentencing judge may appropriately con-

duct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source from which it may come . . . .") (citation, alteration and internal quotation marks omitted). Rather than being co-extensive with the contours of the Fourth, Fifth or Sixth Amendment principles, parameters for sentencing are intentionally broad. *See id*. And as the Supreme Court has noted, "recidivism is as typical a sentencing factor as one might imagine." *Ewing v. California*, 538 U.S. 11, 25 (citation and internal quotation marks omitted).

Considering the broad scope of information that a sentencing judge may consider and the importance of the recidivism factor in fashioning an appropriate sentence, I am persuaded that the Seventh Circuit's interpretation of "intervening arrest" comports more closely with the permissibly broad scope of sentencing considerations than the restrictive definition advanced by my colleagues.

In *United States v. Morgan*, 354 F.3d 621 (7th Cir. 2003), the Seventh Circuit ruled that the term "intervening arrest" encompassed a traffic citation. *See id*. at 623. The Seventh Circuit noted that Morgan "was halted and prevented from leaving until the officer released him . . . ." *Id*. The Seventh Circuit reasoned that a traffic citation, unlike a complaint and identical to a custodial arrest, is predicated on probable cause. *See id*. at 624. The Seventh Circuit concluded that classifying a traffic stop followed by a citation as an arrest comported with the intent of the United States Sentencing Guidelines "because it is the apprehension followed by a new offense that identifies the recidivist . . . ." *Id*.

The Seventh Circuit relied on *Whren v. United States*, 517 U.S. 806 (1996) and *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) (en banc) to supports its conclusion. *See id*.

In *Whren*, the United States Supreme Court described "the temporary detention of a motorist who the police have proba-

ble cause to believe has committed a civil traffic violation," 517 U.S. at 808, as "a traffic violation-arrest . . ." *Id.* at 813. Other Supreme Court decisions lend support to that description. *See, e.g., Atwater v. City of Lago Vista*, 532 U.S. 318, 352, 353 n.25 (2001) (seeming to make a distinction between custodial arrest and a citation, a non-custodial arrest, but an arrest nevertheless); *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (defining custody as an encounter with law enforcement where the detainee would not feel at liberty to terminate the encounter).

In *Berkemer v. McCarty*, 468 U.S. 420 (1984), the Supreme Court struggled with the application of *Miranda* in the context of a traffic stop. *See id.* at 437. The Supreme Court acknowledged that "few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so . . . ." *Id.* at 436 (footnote reference omitted). The Court noted that it had "long acknowledged that stopping an automobile and detaining its occupants constitute a seizure within the meaning of the Fourth Amendment . . ." *Id.* at 436-37 (citation, alteration and internal quotation marks omitted). Although the Court ultimately concluded that a traffic detention did not trigger *Miranda* protections, it stopped far short of labeling a traffic detention a non-arrest. *See id.* at 439 n.29 ("We of course do not suggest that a traffic stop supported by probable cause may not exceed the bounds set by the Fourth Amendment on the scope of a *Terry* stop."). In a similar vein, *Knowles v. Iowa*, 525 U.S. 113, 117 (1998) made a distinction between a "formal arrest" and, presumably, an "informal arrest" and between a "custodial arrest" and presumably, a "non-custodial arrest." However, this distinction, like the ones made in *Whren*, *Atwater*, *Thompson* and *Berkemer* were all made in the context of deciding whether violations of the Fourth, Fifth or Sixth Amendments had occurred. No similar constitutional implications arise in the much broader context of making a recidivism determination for the purpose of sentencing. In

sum, no Supreme Court case compels the cabined definition of arrest formulated by the majority.

In fact, the Supreme Court has specifically cautioned against the approach taken by the majority. In *Dunaway v. New York*, 442 U.S. 200, 212 (1979), the Court observed that "[t]he mere facts that petitioner was not told he was under arrest, was not 'booked' and would not have had an arrest record" did not negate the custodial nature of the seizure. *See also id.* at 213 (cautioning against relying on "technical arrests" to invoke constitutional protections); *id.* at 214 (classifying detention as requiring probable cause "whether or not it is technically characterized as an arrest . . ." ); *id.* (noting that although the arrest in *Brown v. Illinois*, 422 U.S. 590 (1975) "had more of the trappings of a technical formal arrest than petitioner's, such differences in form must not be exalted over substance . . . ." (footnote reference omitted).

The discussion in the majority opinion equating a traffic citation arrest to a charged offense, *see Majority Opinion* p. 20509, proves absolutely nothing. Precisely the same argument can be made regarding a traditional custodial arrest, which also results in charges. *See, e.g., Ewing v. City of Stockton*, 588 F.3d 1218, 1223 n.5 (9th Cir. 2009) (referring to an "arrest on . . . charges"); *see also*, *United States v. Gallegos*, 613 F.3d 1211, 1213 (9th Cir. 2010) (noting that Gallego was arrested on an "illegal reentry charge"); *Luchtel v. Hagemann*, 623 F.3d 975, 981 (9th Cir. 2010) ("A person does not have the right to resist arrest even if the charges are false . . ." ) (citation and alteration omitted).

The Seventh Circuit in *Childs* read the Supreme Court precedent as not precluding the inclusion of traffic stops within the definition of arrest. *See Childs*, 277 F.3d at 953. The Seventh Circuit subsequently relied on *Childs* to hold explicitly that a traffic stop resulting in detention constituted an arrest for the purpose of applying the sentencing guidelines. *See Morgan*, 277 F.3d at 624. In my view, the majority creates an

unnecessary circuit split with its contrary determination. I agree with the majority that a defendant's criminal history should not be overstated. But neither should it be understated. *See* U.S.S.G. § 4A1.2 cmt. 3 (2009) (providing for an upward departure if the criminal history score underrepresents the seriousness of defendant's past crimes). Treating a traffic citation as a non-event seriously undermines the recidivism consideration of the guidelines and understates the criminal history of repeat offenders. I would follow the Seventh Circuit's analysis and affirm the sentence imposed by the district court.