RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0195p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 14-3932

LEWIS POWELL, II,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:13-cr-00189—Donald C. Nugent, District Judge.

Argued: July 29, 2015

Decided and Filed: August 19, 2015

Before: GILMAN, COOK, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Vicki Lynn Ward, Cleveland, Ohio, for Appellant. Daniel J. Riedl, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Vicki Lynn Ward, Cleveland, Ohio, for Appellant. Daniel J. Riedl, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Lewis Powell, II pleaded guilty to numerous drug and weapons charges in April 2014. As part of his written plea agreement, Powell waived most of his post-conviction and appellate rights, but preserved the right to appeal the district court's determination of his criminal-history category and any sentence imposed above his

properly calculated Sentencing Guidelines range. The district court subsequently classified Powell as a career offender and sentenced him to 155 months in prison, near the low end of the Guidelines range as determined by his career-offender status.

Powell has appealed, arguing that the district court miscalculated his criminal-history category and sentenced him above the properly calculated Guidelines range by classifying him as a career offender. For the reasons set forth below, we VACATE the sentence imposed by the district court and REMAND the case for resentencing consistent with this opinion.

## I. BACKGROUND

In April 2013, Powell was one of several individuals named in a 93-count indictment based on a conspiracy to distribute drugs and firearms. Powell entered into a written plea agreement one year later, pleading guilty to only two of the multiple charges against him. The first was to Count 1 (conspiring to possess with the intent to distribute heroin and crack cocaine) and the other was to Count 8 (being an unlicensed firearm dealer). As part of Powell's plea agreement, the government dismissed the remaining counts against him. In another part of the agreement, Powell waived his right to "appeal the conviction or sentence" with the exception of the following three issues:

> (a) any punishment in excess of the statutory maximum; (b) any sentence to the extent it exceeds the greater of any mandatory minimum sentence or the greater of the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement, using the Criminal History Category found applicable by the Court; or (c) the Court's determination of Defendant's Criminal History Category.

The plea agreement was silent as to Powell's criminal-history category and the appropriate Guidelines range, leaving those issues to be determined by the district court. At sentencing, the court determined that Powell was a career offender, automatically placing him in criminal-history category VI. The court also calculated that Powell's base offense level was 34, including a one-level enhancement based on his career-offender status. A three-level reduction for acceptance of responsibility and a two-level reduction for substantial assistance left Powell with a final offense level of 29, resulting in a Guidelines range of 151 to 188 months. The statutory maximum sentence for the conspiracy charge was 360 months of imprisonment; the

maximum sentence for the unlicensed-dealer charge was 60 months.  At sentencing, the court imposed a 155-month term of imprisonment on Count 1 and a 60-month sentence on Count 8, to run concurrently, plus a three-year term of supervised release.  Powell has timely appealed.

## II.  ANALYSIS

Powell points to six separate errors allegedly committed by the district court at sentencing that "substantially prejudiced him," each of which, he argues, justifies remand and resentencing.  Before reaching any of these issues, however, we must first determine which of Powell's arguments are barred by the appellate waiver in his plea agreement with the government.

**A.      Powell's waiver of his appellate rights was valid and must be enforced according to its terms**

We review de novo the question of whether a defendant has waived his right to appeal his sentence.  *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003).  A valid appellate waiver will be enforced according its terms.  *United States v. Toth*, 668 F.3d 374, 377-78 (6th Cir. 2012).  But for a plea agreement to be constitutionally valid, a defendant must have entered into the agreement knowingly and voluntarily.  *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001).

The change-of-plea colloquy here included all the elements needed to establish a voluntary and knowing plea.  At the hearing, Powell told the district court that he had "thoroughly discussed" with his lawyer the consequences of pleading guilty; that he understood that by pleading guilty he would "waiv[e] or giv[e] up" the constitutional rights afforded to criminal defendants; and that he wished to plead guilty "knowingly, voluntarily, and of [his] own free will."  The government next read aloud the entire plea agreement, including the appellate-waiver provision.  Powell then affirmed that there was nothing in the agreement that he did not understand, and he proceeded to plead guilty.

In his reply brief, Powell argues for the first time that his plea was not made voluntarily or knowingly.  He bases this claim on the following interaction that he had with the judge just after his sentence had been imposed:

THE DEFENDANT:  Am I entitled to appeal my Career Offender [status]?

THE COURT:  Yes.  Sure.  Talk to Ms. Ward after this, and, you know, you can come up with something.  Let me know, okay?  But at the end of the day, Lewis, what I did was making a finding of a total offense level of 29.  It really doesn't in the big picture make any difference.

THE DEFENDANT:  Why do you say that, Your Honor?

THE COURT:  Because your original total offense level was 33 without the Career Offender finding, and with the Career Offender finding it was bumped up to 34.  You got a three-level reduction for acceptance of responsibility.  Then the recommendation of the Government for a 5K1.1 got you down to 30, and then my additional lowering it got you down to a 29.

THE DEFENDANT:  But I had a statutory maximum of five years, though.

THE COURT:  That's on Count 8.  That doesn't have anything to do with the Career Offender statute.  And I ran that concurrent with the sentence that you have.

Although Powell appears to have been under a misconception as to the maximum sentence that he could receive as a result of pleading guilty, his confusion was not related to the plea agreement itself.  Such confusion does not render the plea agreement involuntary or unknowing, and the agreement is enforceable.  *See Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 1975) ("A plea is not rendered involuntary merely because a prediction that a guilty plea will result in a light sentence does not come true.").  Furthermore, to the extent Powell argues that his plea was made unknowingly because he believed that he could appeal his career-offender status, that claim is without merit because he *can* challenge that designation insofar as it impacts his criminal-history category, which is one of the issues that he specifically preserved for appeal.

The majority of Powell's arguments on appeal fall outside of the three exceptions to his appellate waiver.  In fact, the only two issues raised by Powell not barred by the appellate waiver are whether the district court (1) improperly determined that he was a career offender, and (2) miscalculated his criminal-history category.  We will address both issues in turn.

**B.     Powell's career-offender status**

Before reaching the merits of Powell's contention that he should not have been designated a career offender, we must first tackle two threshold questions raised by the government.  First, the government argues that Powell waived the career-offender issue as part of

his plea agreement; and, second, it argues that any error by the district court in designating Powell as a career offender was harmless because, "[e]ven without the career offender designation, Powell was a natural Criminal History Category VI."  (Emphasis in original.)

### 1. *Powell preserved his right to dispute his career-offender designation*

Powell's plea agreement preserved only three issues for appeal, none of which explicitly encompasses the question of whether the district court properly designated Powell as a career offender.  According to the government, this bars Powell from raising any challenge to his career-offender status because, "[w]hile Powell reserved the right to challenge the district court's determination of his Criminal History Category, he did not reserve the right to challenge his career offender designation."

The government's narrow interpretation of the exception to the waiver is not entirely without support.  In *United States v. Grundy*, 580 F. App'x 400 (6th Cir. 2014), this court barred a criminal defendant from challenging his career-offender designation due to an identical appellate-waiver provision in his plea agreement.  But *Grundy* has little bearing on the case before us because Powell and Grundy pursued different arguments with regard to this issue.  Unlike Powell, Grundy challenged his career-offender status solely under the equivalent of subsection (b) of the appellate waiver in question here.  *Id.* at 401.  The *Grundy* court thus determined that "subsection (b) preserves Grundy's right to appeal only to the extent his sentence exceeds the maximum of the guidelines imprisonment range or the statutory minimum, whichever is greater. . . . Grundy's 151-month sentence nonetheless falls within the sentencing range for the stipulated offense . . . .  Grundy therefore cannot appeal under subsection (b)."  *Id.* (footnote and citation omitted).

Powell's appeal is not similarly limited because the plea agreement in the present case preserves his right to appeal "the Court's determination of [his] Criminal History Category."  Based on this exception, Powell argues that he did not waive his right to appeal the district court's career-offender determination because that designation directly impacts his criminal-history category.  Despite the link between Powell's criminal-history category and his career-offender status, the government argues that the two are independent for the purposes of Powell's

waiver.  The government, in other words, argues that if Powell had wished to reserve the right to challenge his career-offender status, he could have explicitly done so.

But the government's interpretation goes too far.  If, as the government argues, Powell's waiver prohibits him from challenging the findings underlying the court's criminal-history calculation, what exactly did he reserve under subsection (c) of the exceptions to his appellate waiver?  The more reasonable reading of the appellate waiver here would allow Powell to challenge the findings on which the district court's criminal-history calculation relies, including his career-offender status.

This result is all the more justified by the fact that "any ambiguities in a plea agreement must be construed against the government." *United States v. McIntosh*, 484 F.3d 832, 836 (6th Cir. 2007).  At the very least, Powell's waiver is ambiguous as to his right to appeal his status as a career offender because the district court's career-offender determination necessarily implicates Powell's criminal-history category.  Thus, "[d]espite knowingly and voluntarily entering the plea agreement, [Powell] reasonably could have believed that he retained his right to appeal his sentence to the extent that the district court determined he was a career offender." *See United States v. Charles*, 581 F.3d 927, 932 (9th Cir. 2009) (finding that an appellate waiver that preserved the defendant's right to challenge his criminal-history category also preserved his ability to appeal the district court's career-offender determination).

### 2. The error by the district court regarding Powell's criminal-history category was not rendered harmless by his criminal-history points

But even if Powell preserved this aspect of his appeal in the plea agreement, the government argues that any error by the district court in designating Powell a career offender was harmless because he would still fall under criminal-history category VI by virtue of his 20 criminal-history points. True enough, there are two ways that a defendant can end up in criminal-history category VI under the Guidelines:  (1) as a career offender, U.S.S.G. § 4B1.1(b); or (2) by having 13 or more criminal-history points, *id.* § 5A (Sentencing Table).  The Presentence Report (PSR) prepared by the Pretrial Services and Probation Office identified a total of 20 points in Powell's criminal history.  This has caused the government to argue that Powell's designation as a career offender, even if erroneous, was harmless and does not warrant

remand. *See United States v. Anderson*, 187 F. App'x 517, 523 (6th Cir. 2006) (finding that because the district court's error would not change the defendant's criminal-history category, the appeals court did not need to resolve the mistake); *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (noting that harmless errors at sentencing do not justify remand).

But the government has misapprehended the implications of Powell's challenge. Although the PSR calculated Powell's "natural" criminal-history points as 20, that math relied on the very error that Powell alleges was committed by the district court; i.e., improperly counting prior offenses separately. Furthermore, as the government conceded at oral argument, Powell's career-offender status also substantially enhanced his offense level under the Guidelines. The issue of Powell's career-offender status is thus relevant regardless of whether it changed his final criminal-history category.

### 3. *The district court incorrectly classified Powell as a career offender*

We now turn to the merits of Powell's challenge to his career-offender designation. Powell contends that the district court erroneously classified him as a career offender by improperly counting two of his prior convictions separately. Questions involving the interpretation of the Guidelines are legal issues that we review de novo. *United States v. Partington*, 21 F.3d 714, 717 (6th Cir. 1994).

> The Sentencing Guidelines define a career offender as follows:
>
> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). In determining whether a defendant's previous convictions count separately for the purposes of determining career-offender status and criminal-history points, the Guidelines clarify that

> [p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the

> sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

*Id.* § 4A1.2(a)(2).

The only two crimes of violence from Powell's past are a pair of assault convictions from 2001. In February of that year, while in court on an unrelated charge, Powell was served with a summons and given notice of an aggravated-assault charge against him. Approximately two months later, Powell was arrested for a second felony—assault on a police officer. He was subsequently sentenced for both crimes on the same day. The district court concluded that the service of a summons regarding the first offense prior to the commission of the second offense was sufficient to treat the offenses separately for sentencing purposes. But Powell argues that an intervening summons is not the equivalent of an intervening arrest for purposes of U.S.S.G. § 4A1.2(a)(2). And if these two sentences must be counted together as one for sentencing purposes, then Powell was improperly designated as a career offender.

Powell is not alone in his interpretation of the relevant Guidelines provision. Several circuits, in dicta, have suggested without deciding that an intervening summons or citation is not the same as an intervening arrest for purposes of § 4A1.2(a)(2). *See United States v. Hopson*, 412 F. App'x 532, 536 (3d Cir. 2011) (affirming a sentence in which the district court "pointed out that had Hopson been arrested rather than showing up on his own pursuant to a summons, he would have qualified as a career offender"); *United States v. Matos*, 611 F.3d 31, 39 n.11 (1st Cir. 2010) ("We have previously noted, without deciding the issue, that treating an intervening summons as the functional equivalent of an intervening arrest for the purposes of U.S.S.G. § 4A1.2 seems problematic. *United States v. Correa*, 114 F.3d 314, 316 n.3 (1st Cir. 1997). We acknowledge the same concern here but, again, do not reach the issue."); *United States v. Pyne*, 151 F. App'x 901, 907-08 (11th Cir. 2005) (vacating and remanding on other grounds where "the district court found that the disorderly conduct citation did not constitute 'an intervening arrest,' and that the two attempted home invasions were therefore related"); *but cf. United States v. Armstrong*, 782 F.3d 1028, 1037 (8th Cir. 2015) (holding that the service of a bench warrant to a defendant already in custody *is* the functional equivalent an "intervening arrest").

Two circuits, however, have squarely addressed this issue—and they reached opposite conclusions. *Compare United States v. Morgan*, 354 F.3d 621 (7th Cir. 2003), *with United States v. Leal-Felix*, 665 F.3d 1037 (9th Cir. 2011) (en banc). The facts of these cases are slightly different than Powell's, but the logic behind them is fully applicable. For instance, both of the relevant cases involved traffic citations rather than summonses, but that distinction is immaterial. *See Martinez v. Carr*, 479 F.3d 1292, 1298 n.6 (10th Cir. 2007) (treating the issuance of a summons as "the functional equivalent of [a] citation"). Although both cases involved the application of U.S.S.G. § 4A1.2(a)(2) in the context of calculating criminal-history points rather than determining career-offender status, the same standard applies to both issues under the Guidelines. *See* U.S.S.G. §§ 4A1.2(a)(2) ("If the defendant has multiple prior sentences, determine whether [the] sentences are counted separately or as a single sentence."); 4B1.2(c) ("The term 'two prior felony convictions' means [that] . . . the sentences for at least two of the aforementioned felony convictions are counted separately . . . .").

The first case on point comes from the Seventh Circuit. In *Morgan*, the district court counted two of the defendant's prior traffic convictions separately for purposes of calculating his criminal-history points. The defendant appealed his sentence, arguing that the two convictions were "related" and thus should have been counted only once. *Id.* at 623. Although the version of § 4A1.2(a)(2) that was in effect at the time used the word "related" to describe sentences that should be counted together, its substance was the same as the contemporary rule. *See United States v. Davis*, 720 F.3d 215, 219 (4th Cir. 2013) ("[T]here is no substantive difference between the old rule and the new rule, which provides that two prior sentences count separately if the offenses were separated by an intervening arrest.").

In sum, Morgan's two prior violations were separated by an intervening citation but not an intervening arrest. He therefore argued that the offenses, for which he was sentenced the same day, should not have been counted separately. The Seventh Circuit disagreed. In a two-page opinion, the court held that a traffic citation was no different than an arrest for purposes of the Guidelines:

> The idea behind [§ 4A1.2(a)(2)] is that a single criminal episode may give rise to
> multiple convictions . . . and should count only once no matter how the prosecutor
> drafts the charges; but a defendant who commits a crime, is arrested for that

offense, and then commits another crime is a recidivist whose criminal record should be tallied in full.

. . . No matter what word is used, Morgan was caught red handed, driving after his license's revocation. He went right on committing that offense. Clever charging practices did not multiply his convictions; his failure to adhere to the law following his initial apprehension is the root cause. Calling the traffic stop an "arrest" implements the Sentencing Commission's goal.

*Id.* at 623 (citation omitted). The court further justified its position by pointing out that

[a] traffic stop is an "arrest" in federal parlance. Morgan was halted and prevented from leaving until the officer released him. . . . That a simple arrest did not become a full custodial arrest does not matter for the Guidelines' purpose . . . because it is the apprehension followed by a new offense that identifies the recidivist.

*Id.* at 624 (citations omitted).

The Ninth Circuit came to the opposite conclusion seven years later on facts materially indistinguishable from those in *Morgan*. As in *Morgan*, the defendant in *Leal-Felix* challenged his criminal-history points. The district court had calculated the points by counting two prior offenses separated by an intervening citation (but not an arrest) as separate offenses despite the fact that the sentences were imposed on the same day. Vacating an earlier, divided panel opinion, the Ninth Circuit split with the Seventh in a 10 to 1 en banc decision. The majority interpreted the term "intervening arrest" to include only "formal" arrests, which it defined as "informing the suspect that he is under arrest, transporting the suspect to the police station, and/or booking the suspect into jail." *Leal-Felix*, 665 F.3d. at 1041 (footnotes omitted). "Limiting 'arrest' to a formal arrest (rather than a mere citation)," the court explained, "is consistent with common usage, case law, and the context and purposes of the Sentencing Guidelines." *Id.* (footnote omitted).

The heart of the *Leal-Felix* court's disagreement with *Morgan* was based on the rationale that

an arrest has a stronger deterrent effect than a citation. Thus, one who is subjected only to a momentary detention and later reoffends is less culpable than the defendant who is subjected to the greater deterrence of an arrest, yet still reoffends. Imposing a higher sentence on the defendant who was arrested, rather

than merely cited, is therefore consistent with the Sentencing Guidelines' goal of imposing a just punishment.

*Id.* at 1042-43 (citation and footnote omitted).

The *Leal-Felix* majority also relied on the rule of lenity. Finding the term "arrest" to be at the very least ambiguous, *id.* at 1044, the majority held that "[i]f, after applying the normal rules of statutory interpretation, the Sentencing Guideline is still ambiguous, the rule of lenity requires us to interpret the Guideline in favor of [the defendant]." *Id.* at 1040.

But some might find the most compelling argument in *Leal-Felix* to come from the concurring opinion. Writing separately, Judge M. Margaret McKeown suggested that "common understanding" is the most important reason to conclude that a traffic citation is not an arrest for purposes of the Guidelines. *Id.* at 1044 (McKeown, J., concurring). She reasoned that

> the common understanding of the term arrest does not include being pulled over and ticketed for a traffic violation. It is a bedrock principle of statutory construction that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." I am confident that an average citizen—with or without a law degree—would not believe he had been arrested if pulled over, briefly detained and issued a traffic ticket. . . . [T]reating an ordinary traffic ticket as an arrest defies our common experience . . . .

*Id.* at 1044-45 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

In support of this conclusion, Judge McKeown cited to numerous application forms for jobs and schools that requested information about the applicant's arrest history but not his or her citation history. *Id.* at 1045 nn.1-6. "It seems unlikely," she wrote, "that police departments, prisons, colleges, government agencies and adoption organizations mean—or are even concerned about—speeding tickets when they ask if applicants have ever been arrested." *Id.* at 1045.

The Seventh Circuit's interpretation also runs afoul of the dictionary definition of the term. *Black's Law Dictionary* defines the term "arrest" as "(1) A seizure or forcible restraint [or] (2) [t]he taking or keeping of a person in custody by legal authority, esp. in response to a criminal charge." *Black's Law Dictionary* at 130 (10th ed. 2014).

Both the Seventh and the Ninth Circuits claim that their respective holdings support the purpose of the Guidelines, yet they reach opposite conclusions. Although reasonable jurists can

(and have) differed on this issue, we find the reasoning of the Ninth Circuit more persuasive. The Sentencing Commission did not define the word "arrest," and we agree with Judge McKeown and her colleagues that interpreting it to include a citation (or summons) flies in the face of common understanding and stretches the word's meaning too far. Indeed, in other contexts, such as Fourth Amendment seizures, courts distinguish summonses from arrests. Although arrests constitute seizures, summonses—according to every circuit court that has considered the issue—do not. *See Burg v. Gosselin*, 591 F.3d 94, 99-101 (2d Cir. 2010) (collecting cases).

If the Sentencing Commission had intended for the words "intervening arrest" to encompass other intervening events such as summonses and citations, it could easily have used a different, broader term. At best, the word "arrest" is ambiguous in this context, and the rule of lenity requires that we resolve that ambiguity in favor of Powell.

**C.      Criminal-history-category calculation**

Because of our conclusion that the district court's interpretation of U.S.S.G. § 4A1.2(a)(2) was erroneous, we must now recalculate Powell's criminal-history category. The district court's error impacted not only its treatment of Powell's assault convictions, but also two of his traffic offenses from 2009. According to the PSR, which used the same erroneous understanding of the Guidelines as the district court, Powell had 20 criminal-history points. Our recalculation starts there.

> ***1.      Powell's criminal-history category does not change despite the district court's error***

The PSR assigned three criminal-history points to each of Powell's 2001 assault convictions. Counting those sentences together would therefore reduce Powell's criminal-history points from 20 to 17.

The above analysis applies with equal force to Powell's traffic offenses from 2009. As with his assault offenses, his traffic violations were not separated by an intervening arrest (Powell was cited but not arrested for the first offense). The PSR added two points to Powell's criminal history for each traffic offense despite the fact that the sentences were imposed on the

same day.  Removing one of those brings the point total for Powell's criminal history down to 15.

But a score of 15 is still more than enough to place Powell in criminal-history category VI, which includes all criminal-history totals above 12.  U.S.S.G. § 5A (Sentencing Table).  Although Powell seeks further reductions that would bring him below the Category VI threshold, we find those arguments unpersuasive.  First, Powell argues that his sentences for the 2009 traffic violations should not contribute to his criminal history at all because they are only misdemeanor offenses.  Such offenses are, in some circumstances, indeed excluded from criminal-history calculations.  But these exclusions do not apply to either of Powell's traffic violations.  To the contrary, the Guidelines actually *require* that his sentence for driving under the influence be counted.  *See* U.S.S.G. § 4A1.2 cmt. n.5 ("Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted, without regard to how the offense is classified.").

And his sentence for driving with a suspended driver's license (driving under suspension) also counts.  Section 4A1.2(c) of the Guidelines states that

> [s]entences for misdemeanor and petty offenses are counted except . . . [s]entences for the following prior offenses . . . , [including driving under suspension], are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense.

Powell's sentence for driving under suspension—180 days in custody (155 suspended), a fine of $1,500 ($750 suspended), and five years' probation—exceeds one or more of the minimums listed in § 4A1.2(c)(1).  So although the traffic-related sentences should not be counted separately for purposes of Powell's criminal-history category, they should be counted.

Finally, Powell contends that his 2009 sentence for aggravated trespass and his 2010 sentence for criminal damaging/endangering should not be counted because they were violations of Warren, Ohio's local ordinances, and local-ordinance violations are generally excluded from criminal-history calculations under U.S.S.G. § 4A1.2(c)(2).  But this argument is a misreading of the Guidelines.  Section 4A1.2(c)(2) states that local-ordinance violations are "never counted . . . except those violations that are also violations under state criminal law."

Both of the crimes in question are violations of the Warren City Code *and* the Ohio Revised Code. In fact, the city of Warren appears to have copied and pasted its definitions of aggravated trespass (*compare* Warren City Code § 541.051 *with* ORC § 2911.211) and criminal damaging or endangering (*compare* Warren City Code § 541.03 *with* ORC § 2909.06) directly from the Ohio Revised Code. These sentences were thus properly counted toward Powell's criminal-history category.

The result of all this math is that Powell's corrected criminal history adds up to 15 points, which still lands him in criminal-history category VI. If this were the end of the matter, the district court's error would be harmless. But our analysis in fact does not end here.

**D.  Offense-level calculation**

A career-offender designation not only modifies a defendant's criminal-history category, but also enhances the other axis of the sentencing table: his offense level. U.S.S.G. § 4B1.1(b). In Powell's case, his career-offender status increased his offense level by one—from 33 to 34, which the district court reduced to 29 after applying two downward departures.

This one-level increase in and of itself might not have changed Powell's sentence because, without the career-offender enhancement, Powell's Guidelines range would have been reduced only slightly from 151-188 months to 140-175 months (based on a criminal history category of VI and an offense level of 28). His actual sentence of 155 months was thus still within the lower half of this putative Guidelines range. But a review of the sentencing transcript reveals yet another influence of Powell's undeserved career-offender status on his sentence.

Just before court adjourned at the close of Powell's sentencing hearing, Powell's attorney asked about "the two-level reduction that the Justice Department had indicated for drug cases." The government responded that "[i]t doesn't apply to Career Offenders. That policy does not apply to Career Offenders, and so would not apply to Mr. Powell." The policy to which the government referred is the Department of Justice's "Drugs Minus Two" sentencing policy adopted under then-Attorney General Eric Holder and codified in the Guidelines through Amendment 782, effective November 1, 2014. *See* U.S.S.G. Supp. App. C. Pursuant to that policy, the base offense level of many, but not

all, drug crimes was retroactively reduced by two.  *See* Amendment to the Sentencing Guidelines (July 18, 2014), http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20140718_RF_Amendment782.pdf ("The Commission has determined that Amendment 782 . . . should be applied retroactively.").

As the government made clear at the sentencing hearing (and again conceded at oral argument), Powell would have been eligible for this two-level reduction but for his career-offender status.  Recalculating Powell's offense level as a noncareer offender thus requires a reduction of not one but three levels, for a final offense level of 26.  The advisory Guidelines range for an offense level of 26 and a criminal-history category of VI is 120 to 150 months of imprisonment.  U.S.S.G. § 5A.  This is a significant reduction from the range calculated by the district court at sentencing (151 to 188 months), and the difference is enough to place Powell's 155-month sentence outside the properly calculated Guidelines range.

Powell's above-range sentence is also one of the grounds excepted from his appellate-waiver agreement.  Accordingly, a remand is necessary to allow the district court to resentence Powell according to the proper Guidelines calculations.  *Cf. United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (holding that a remand is unnecessary if this court is "certain that . . . any such error 'did not affect the district court's selection of the sentence imposed'" (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992))).  We have no such certainty here.

### III.    CONCLUSION

For all of the reasons set forth above, we **VACATE** the sentence imposed by the district court and **REMAND** the case for resentencing consistent with this opinion.