NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 17a0238n.06

Case No. 16-5354

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 26, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| JOSE ROMAN CASTRO, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

BEFORE: BATCHELDER, STRANCH, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** This is an appeal from a final judgment entered on March 10, 2016, in a criminal case involving offenses against the United States. Appellant Jose Roman Castro ("Castro") claims that the district court erroneously applied the sentencing guidelines when it found that, for purposes of 8 U.S.C. § 1326(a), a previously-deported alien violates 8 U.S.C. § 1326(a) at the time of re-entry to the United States, as opposed to when the alien is "found in" the United States by law enforcement authorities. As the district court properly applied the sentencing guidelines in finding that the relevant conduct for being "found in" the United States includes entry into the United States, we **AFFIRM** the district court judgment.

I.

On July 22, 2015, Castro was working at a restaurant in Louisville, Kentucky when an Immigration Enforcement Agent with Immigration and Customs Enforcement ("ICE"), went to the restaurant looking for a man known as Christian Ruiz who had previously made false statements to agents about his immigration status. **R. 11, Page ID #111.** That person was subsequently identified as Castro and was arrested at the restaurant for being illegally present in the United States. *Id.* Castro had previously been deported on August 19, 2000, for having an aggravated felony—a prior drug trafficking conviction. *Id.* At the time of this arrest, Castro did not have the permission of the Secretary of the Department of Homeland Security to reapply for entry into the United States. Castro told the agents that he was from Mexico and had been in the United States for 14 years. *Id.*

On August 19, 2015, a federal grand jury returned an indictment and charged Castro with being an alien who was found in the United States after having been deported, and not having obtained the express consent of the Secretary of the Department of Homeland Security to reapply for admission to the country in violation of 8 U.S.C. § 1326(a) and (b)(2) (Count 1). **R. 10, Page ID #14.** Castro was also charged with possession of a counterfeit and falsely made Alien Registration Receipt Card (green card) in violation of 8 U.S.C. § 1546(a) (Count 2) and knowingly using a false identification document ("green card") to satisfy a requirement of the employment verification system in violation of 18 U.S.C. § 1546(b)(2) (Count 3). **R. 1, Page ID #14-15.**

The parties entered into a plea agreement, which included an appellate waiver, under Federal Rule of Criminal Procedure 11(c)(1)(C) and agreed, for sentencing guideline purposes, to a total offense level of 13, which was calculated based on a base offense level of 8 under U.S.S.G. § 2L1.2(a); a 12-level enhancement under § 2L1.2(b)(1)(A); a 3-level reduction for

acceptance of responsibility under § 3E1.1(a) and (b); and a 4-level reduction for a fast-track disposition under § 5K3.1. **R. 23, Page ID #47.** The government recommended a sentence at the low end of the guideline range. **R. 23, Page ID # 156.** Under the 2015 Guidelines Manual, the probation office determined that Castro's total offense level was 21 and his criminal history category was III, which produced a guideline range of 46 to 57 months. **R. 30, Page ID #112, 116, 120.** The guideline calculation in the Presentence Investigation Report ("PSR") used a base offense level of 8 under U.S.S.G § 2L1.2(a); a 16-level enhancement under § 2L1.2(b)(1)(A); and a 3-level reduction for acceptance of responsibility. **R. 30, Page ID #112.**

The government and defense counsel objected to the PSR's total offense level and argued that the 12-level enhancement applied because Castro's drug trafficking conviction in North Carolina occurred more than 15 years prior to his arrest in the instant case on July 22, 2015. **R. 28, Page ID #94; R. 30, Page ID #123-24.** The government explained that Castro's North Carolina conviction was completed on June 18, 2000, is 15 years and 34 days before he was arrested in this case on July 22, 2015. Therefore, the government argued Castro should not receive any criminal history points for that conviction since it was more than 15 years old. **R. 28, Page ID #94.** Castro's counsel objected to the 16-level enhancement for the same reasons articulated by the government. **R. 30, Page ID #123-24.**

The probation office, however, stated that Castro admitted to law enforcement officers that he had been in the United States for 14 years. **R. 30, Page ID #123-24.** Consequently, Castro's admission placed him within the 15-year time period that triggered the 16-level enhancement. *Id.* At sentencing, the government changed its position and agreed with the probation office that the 16-level enhancement applied. After briefing, the district court ruled that the 16-level enhancement applied and thus rejected the plea agreement. **R. 39, Page ID**

**#176.** Since the district court planned to impose a higher sentence than that contemplated in the plea agreement, the district court gave Castro the opportunity to withdraw his guilty plea. Castro declined, and the parties again agreed to all terms of the plea agreement with the exception of the guideline calculations and the appellate waiver.

With a total offense level of 21 and a criminal history category of III, the guideline range was 46 to 57 months. **R. 39, Page ID #178.** The court granted the government's motions for a 2-level reduction under U.S.S.G § 5K1.1 and a 4-level reduction under the fast-track program (§ 5K3.1) which resulted in a total offense level of 15, a criminal history category of III, and a guideline range of 24 to 30months. The government recommended a sentence of 24 months. **R. 39, Page ID #179.** The district court sentenced Castro to concurrent terms of twenty-four months imprisonment on each of the three counts of indictment, to be followed by a one-year term of supervised release. **R. 34, Page ID #131-32; R. 39, Page ID #180-82.**

## II.

"Questions involving the interpretation of the Guidelines are legal issues that we review de novo." *United States v. Powell*, 798 F.3d 431, 437 (6th Cir. 2015) (citations omitted); *United States v. Sanbria-Bueno*, 549 F.App'x 434, 438 (6th Cir. 2013) (citation omitted) (construing U.S.S.G § 2L1.2) ("We review the district court's legal interpretation of the Guidelines de novo.").

## III.

With regard to offenses involving unlawfully entering or remaining in the United States, § 2L1.2 of the 2015 Guidelines Manual (the Guidelines in effect at the time Castro was sentenced) provides in relevant part:

> If the defendant previously was deported, or unlawfully remained in the United States, after —

(A) A conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months . . . increase by 16 levels if the conviction receives criminal history points under Chapter Four or by 12 levels if the conviction does not receive criminal history points . . . .

"Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's *commencement of the instant offense* is counted." USSG § 4A1.2(e)(1) (emphasis added). Though the sentencing guidelines are no longer binding on district courts, *United States v. Booker*, 543 U.S. 220, 245 (2005), the Supreme Court has instructed courts to give "respectful consideration" to the guidelines, the commentary, and relevant policy statements, *see Pepper v. United States*, 562 U.S. 476, 501 (2011); *see also United States v. Douglas*, 634 F.3d 852, 862 (6th Cir. 2011) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.") (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)); *United States v. Lay*, 583 F.3d 436, 446 (6th Cir. 2009).

In keeping with the Supreme Court's instruction, this court looks to the commentary to U.S.S.G. § 4A1.2, which provides, "Section 4A1.2(d)(2) and (e) establishes the time period within which prior sentences are counted. *As used in § 4A1.2(d)(2) and (e), the term 'commencement of the instant offense' includes any relevant conduct.*" U.S.S.G § 4A1.2 App. n.8 (emphasis added). The issue is whether Castro's reentry counts as "relevant conduct" in determining when his crime commenced. We hold that it does. Castro necessarily engaged in the "relevant conduct" of being "found in" the United States every day he maintained illegal presence within the country, including the day he first entered which was within the 15-year time period that triggered the 16-level enhancement. We previously addressed this issue in *United States v. Galvan-Guajardo*, which found that "[e]ntering the United States is relevant to the

crime of 'being found in' the United States. Accordingly, for purposes of USSG § 4A1.2(e)(1), the crime of 'being found in' the United States without proper authorization may commence when the deported alien is present in the United States." 78 F. App'x 477, 480-81 (6th Cir. 2008). Therefore, the district court properly applied the sentencing guidelines in finding that the relevant conduct for being "found in" the United States included Castro's entry into the United States.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the final judgment of the district court.