RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

WILLIAM C. ROGERS,

*Defendant-Appellant*.

No. 22-5837

Appeal from the United States District Court for the Eastern District of Kentucky at London.
No. 6:22-cr-00005-1—Robert E. Wier, District Judge.

Argued:  October 25, 2023

Decided and Filed:  November 6, 2023

Before:  McKEAGUE, READLER, and DAVIS, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Timothy Rodriguez, BRADLEY ARANT BOULT CUMMINGS LLP, Nashville, Tennessee, for Appellant.  John Patrick Grant, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.  **ON BRIEF:**  Timothy Rodriguez, BRADLEY ARANT BOULT CUMMINGS LLP, Nashville, Tennessee, for Appellant.  John Patrick Grant, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

CHAD A. READLER, Circuit Judge.  William Rogers has a history of drug offenses.  He challenges the way that history was treated in calculating his most recent criminal sentence.

Six years ago, Rogers was caught in a motel room with methamphetamine. A year later, he was found in possession of the same drug during a traffic stop. For these two incidents, Rogers was indicted for violating Kentucky drug trafficking laws, eventually receiving separate, concurrent sentences for each offense. More recently, Rogers pleaded guilty to possessing methamphetamine with the intent to distribute the drug in violation of federal law. Based on Rogers's two prior offenses, the district court classified Rogers as a career offender, which raised his sentencing range and, with it, his ultimate sentence.

Rogers believes that his earlier offenses should be treated as a single prior sentence, rendering the career offender enhancement inapplicable. On this point, all agree that, in the Guidelines context, prior offenses separated by an "intervening arrest" result in distinct sentences for purposes of career offender status. *See* U.S.S.G. §§ 4A1.2(a)(2), 4B1.2(c). And because Rogers was arrested (as the term is used in the Guidelines) after the motel incident but before the traffic stop, we affirm.

**I.**

In January 2017, officers arrived at a motel to investigate a drug trafficking tip. They discovered William Rogers sitting in one of the rooms with the door open. The room reeked of marijuana. Upon request, Rogers surrendered to the officers a small bag containing various drugs, including methamphetamine. Rogers was later taken into custody.

But he did not remain so confined. Under Kentucky law, a defendant in custody for "longer than 60 days" "without being indicted" can be released. *See* Ky. R. Crim. P. 5.22(3). And that apparently is what happened to Rogers. Although the evidence in the record is scant, we know Rogers was released after being taken into custody, seemingly due to a failure to indict.

Here, we take note of a feature in Kentucky law: a failure to indict does not "prevent any charge against such defendant from being submitted to another grand jury." *See* Ky. R. Crim. P. 5.22(4). Put another way, Kentucky allows a grand jury to indict a defendant belatedly even if a prosecutor failed to obtain an indictment in the wake of the purportedly criminal incident. *See, e.g.*, *Hampton v. Commonwealth*, No. 2019-CA-000813-MR, 2020 WL 598260, at *2 (Ky. Ct. App. Feb. 7, 2020) (relying on Ky. R. Crim. P. 5.22(4) to reject challenge to a 2010 indictment

for conduct that occurred in 2007, notwithstanding a 2008 order of dismissal by a grand jury). In line with that rule, a grand jury indicted Rogers in February 2018 for his 2017 Kentucky offense, trafficking in two grams or more of methamphetamine. But Rogers was not in police custody when the indictment was issued—he had been released several months earlier.

His freedom, however, did not last. A month after Rogers's indictment, officers encountered him once again. This time, Rogers was riding in the front seat of a vehicle that was pulled over for a minor traffic violation. As the stop unfolded, officers realized that Rogers had an active warrant for his arrest for failing to appear following the February 2018 indictment. A search of the car unearthed several incriminating items, including a bag of methamphetamine under Rogers's seat. Rogers's fellow passengers pointed the finger at him, and officers arrested Rogers. He ultimately pleaded guilty to two state felony drug trafficking offenses (one from the 2017 motel incident, the other from the 2018 traffic stop). Rogers was sentenced on the same day to concurrent prison terms for the two drug felonies. He was released in November 2020.

Fast forward a year. Officers once again found Rogers in possession of methamphetamine, which Rogers admitted he was attempting to sell. This time, the incident caught the attention of federal authorities. Following a federal indictment, Rogers pleaded guilty to possessing with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a). Before sentencing, the probation office recommended that Rogers's earlier crimes—the January 2017 and March 2018 offenses—warranted application of the career offender enhancement, which applies to certain defendants with "at least two prior felony convictions of . . . a controlled substance offense." *See* U.S.S.G. § 4B1.1(a). In Rogers's case, the enhancement raised his base offense level from 34 to 37, meaning that after a three-level reduction for acceptance of responsibility, he faced a Guidelines range of 262 to 327 months.

Rogers objected to the enhancement. To his mind, the two drug offenses did not count as distinct prior felony convictions for enhancement purposes because they were not "separated by an intervening arrest," an express requirement in the Guidelines. *See* U.S.S.G. §§ 4A1.2(a)(2), 4B1.2(c). The district court disagreed, applied the career offender enhancement, and imposed a below-Guidelines sentence of 240 months of imprisonment. Rogers's appeal followed.

**II.**

Rogers renews his contention that his two state drug offenses should not have triggered the career offender designation.  Whether an offense counts as a prior conviction for determining career offender status under U.S.S.G. § 4B1.1 is a question of law we review de novo.  *United States v. Hill*, 982 F.3d 441, 443 (6th Cir. 2020).

A.  At bottom, Rogers's case centers on two terms of art used in the Guidelines.  One is "prior sentence of imprisonment."  The other is "intervening arrest."  These terms operate in tandem.

Begin with some fundamentals of the Guidelines.  A defendant's criminal history category (which, together with the defendant's underlying offense level, defines the applicable Guidelines range) turns in part on whether the defendant has had a "prior sentence of imprisonment."  *See* U.S.S.G. § 4A1.1.  More prior sentences mean a higher criminal history category and, with it, a higher Guidelines range.  *See id.*  And if at least two of those prior sentences are tied to certain "prior felony convictions"—either "a crime of violence" or "a controlled substance offense"—they raise the specter of a career offender enhancement.  *See id.* §§ 4B1.1(a), 4B1.2(c).

A nuance in the Guidelines' terminology arises here.  For a "prior sentence of imprisonment" to count for purposes of the career offender enhancement, the sentence must be tied to a "prior felony conviction[]."  *Id.* § 4B1.2(c) (citing § 4A1.1(a), (b), or (c)).  Yet prison sentences are not always so neatly delineated.  Case in point, offenders with multiple offenses are often sentenced for those offenses in one fell swoop.  In that instance, to discern what constitutes a "prior sentence of imprisonment," do we count the entire sentence as one; do we tie the number of "prior sentences" to the number of underlying offenses; or do we use another metric?

Having prompted the question, the Guidelines give us the answer, at least in part.  They explain that "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest."  *Id.* § 4A1.2(a)(2).  An intervening arrest, in turn, is defined as an instance where the "defendant is arrested for the first offense prior to

committing the second offense." *Id.* In this setting, then, an "intervening arrest" is dependent on two things: (1) an arrest (2) that occurs at some point before the commission of a second offense.

That takes us to the issue at the heart of this case: what counts as an "arrest" for purposes of determining a separate prior sentence under § 4A1.2(a)(2)? On this matter, the Guidelines are silent. That being the case, we interpret the term in line with its ordinary meaning. *United States v. Riccardi*, 989 F.3d 476, 488 (6th Cir. 2021).

1. The ordinary meaning of "arrest," however, is not intuitive. *See* Joshua Dressler et al., *Understanding Criminal Procedure* § 9.01 (7th ed. 2020) ("The term 'arrest' is often used . . . but is rarely defined."); Charles H. Whitebread & Christopher Slobogin, *Criminal Procedure* § 3.02, p. 74 (3d ed. 1993) ("Determining whether a given detention is an arrest can often be a difficult endeavor."). The word derives from the middle-French word *arreter*, meaning to "stop or stay." *Legrand v. Bedinger*, 20 Ky. 539, 540 (1827); *see also* 1 Clarence Alexander, *The Law of Arrest in Criminal and Other Proceedings* § 45 (1949). In turn, the common law understood an arrest as the "mere grasping or application of physical force with lawful authority." *California v. Hodari D.*, 499 U.S. 621, 624 (1991). *But see Torres v. Madrid*, 141 S. Ct. 989, 1008 (2021) (Gorsuch, J., dissenting) (maintaining that common law arrest ordinarily required possession of the criminal suspect). In so doing, the common law "distinguished the application of force," which amounted to an arrest, "from a show of authority," such as an order or command from law enforcement, which did not. *Torres*, 141 S. Ct. at 995 (majority opinion).

Informed by the criminal procedure revolution of the mid-20th century, the modern understanding of the term "arrest" has taken on a narrower meaning, one that requires more than a temporary use of force on an individual. Today's inquiry instead centers on whether an individual has been taken into custody by police during a criminal investigation. *See* 2 Wayne R. LaFave et al., *Criminal Procedure* § 3.5(a) (4th ed. 2015). Under this new paradigm, a routine traffic stop is considered a *seizure*, which implicates the Fourth Amendment to some degree, but not an *arrest*, which would authorize an officer to, among other things, conduct a full search of a stopped car. *See Knowles v. Iowa*, 525 U.S. 113, 114 (1998). Or consider the term's meaning for purposes of *Miranda*. In that setting, a suspect is deemed to be in custody when there is a

"formal arrest or restraint on freedom of movement of the degree associated with a formal arrest," thereby triggering the suspect's *Miranda* rights. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)); *see also United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998) (understanding "custody" under *Miranda* to require formal arrest). In view of this evolving history, modern dictionaries often include some variation on both the common law and more contemporary understandings when defining "arrest." *See, e.g.*, *Arrest*, *Black's Law Dictionary* (11th ed. 2019) (defining arrest as either "[a] seizure or forcible restraint, esp. by legal authority" or "[t]he taking or keeping of a person in custody by legal authority"); *Arrest*, *Ballentine's Law Dictionary* (3d ed. 2010) (defining arrest as "taking, seizing or detaining" accomplished by "touching or putting hands on," or "any act that indicates an intention to take . . . into custody" or "consent").

2. This varied background has produced varied treatment in the circuits over the meaning of the Guidelines phrase "intervening arrest." Start with the Seventh Circuit's decision in *United States v. Morgan*. Adopting a broad view of what constitutes an arrest, the Seventh Circuit held that a traffic stop in which a police officer issued the defendant a citation amounted to an "arrest." 354 F.3d 621, 624 (7th Cir. 2003). It was of no moment that the officer merely stopped Morgan and did not "escort" him to jail; a "traffic stop," our sister court reasoned, "is an 'arrest' in federal parlance." *Id.* at 623–24. And that "arrest," in turn, was treated as an intervening one, meaning the defendant's subsequent, separate arrest counted as a second prior offense under § 4A1.2(a)(2) of the Guidelines.

Contrast that holding with one from the Ninth Circuit, *United States v. Leal-Felix*, 665 F.3d 1037, 1038–39 (9th Cir. 2011) (en banc). Presented with a fact pattern nearly identical to *Morgan*—two offenses separated by a traffic stop—the Ninth Circuit reached a different conclusion: an arrest requires an individual to be formally arrested, meaning a routine traffic stop in which a citation is issued is insufficient. *Id.*; *see also id.* at 1041 (understanding a formal arrest to be indicated by "informing the suspect that he is under arrest, transporting the suspect to the police station, and/or booking the suspect into jail.") In the years that followed, two other circuits have taken the Ninth Circuit's side in some fashion. *See United States v. Wright*, 862 F.3d 1265, 1281–83 (11th Cir. 2017); *United States v. Ley*, 876 F.3d 103, 107 (3d Cir. 2017);

*see also United States v. Powell*, 798 F.3d 431, 440 (6th Cir. 2015) (noting in dicta that the Ninth Circuit's approach was "more persuasive").

B.  So how should we construe an arrest under the Guidelines provision at issue?  Text, context, and precedent together confirm that, for purposes of § 4A1.2(a)(2), an arrest requires placing someone in police custody as part of a criminal investigation.  Begin from a familiar starting point, the text, viewed in a temporal light.  Initially located in an application note to the Guidelines, the phrase "intervening arrest" was included in the text of § 4A1.2(a)(2) in 2007.  That makes the more recent understanding of the term "arrest" the one we should look to in interpreting the Guidelines.  *See United States v. Sands*, 948 F.3d 709, 713–14 (6th Cir. 2020).  And on that front, there is near universal agreement that the common, modern reading of "arrest" is akin to a custodial arrest.  Leading commentators agree on the point.  *See, e.g.*, Dressler et al., *supra* § 9.01 (recognizing that the use of the term to refer to a "temporary detention of a person," such as in a traffic stop, "is uncommon"); LaFave et al., *supra* § 3.5(a) (discussing evolution of the understanding of "arrest").  And case law, while not uniform, leans in the same direction.  *See, e.g., Wright*, 862 F.3d at 1282 (observing that an arrest is "ordinarily" associated with a custodial arrest); *Leal-Felix*, 665 F.3d at 1044 (McKeown, J., concurring) (addressing the "common understanding of the term arrest" to require custodial arrest).

These conclusions are consistent with the ways in which the term "arrest" is used in everyday parlance.  A look at the most widely used corpus of English—the Corpus of Contemporary American English—confirms that society most often associates an "arrest" with other terms reflective of a formal or custodial arrest.  *See Fulkerson v. Unum Life Ins. Co. of Am.*, 36 F.4th 678, 682–83 (6th Cir. 2022) (recognizing that a "corpus resource can foster a more rigorous analysis of a term's ordinary meaning" than dictionaries).  Consider the following examples:

- arrested and charged
- arrested on suspicion of
- arrested in connection with
- arrest on charges of
- arrested for the murder

- arrested and convicted of
- arrested for possession of
- arrested and taken to
- arrested and accused of
- arrested and charged in

*See* Brigham Young Univ., *Corpus of Contemporary American English*, http://corpus.byu.edu/coca (examining the top 10 "cluster" results for "arrest"). Exemplifying the point is Judge McKeown's concurring opinion in *Leal-Felix.* 665 F.3d at 1045. Canvassing a host of instances where "prior arrests" are required to be disclosed—from government job postings and college applications to general background checks and adoption papers—Judge McKeown persuasively observed that to think these disclosure requirements encompass a prior traffic stop would defy "our common experience." *Id.* After all, "an average citizen—with or without a law degree—would not believe he had been arrested if pulled over, briefly detained and issued a traffic ticket." *Id.*

And then consider context. The term "intervening arrest" informs the term "prior sentence of imprisonment," on which the computation of a defendant's criminal history (and the Guidelines' consideration of recidivism) hinges. *See* U.S.S.G. § 4A1.2. In that way, the Guidelines expressly eschew using a single charging instrument or a single sentencing proceeding as a proxy for determining what is a prior sentence. *Id.* § 4A1.2(a)(2). The Guidelines likewise reject counting each sentence based on when the underlying offense took place. *Cf., e.g.*, *Wooden v. United States*, 595 U.S. 360, 363 (2022) (examining the vexing occasions clause of the Armed Career Criminal Act); *id.* at 388 (Gorsuch, J., concurring) (observing that the occasions clause "supplies little guidance, does not define its key term, and the word it does use ('occasions') can lead different people to different intuitions about the same set of facts"). Instead, the Guidelines' focus is on the time of an arrest, apparently with the understanding that "an offender who has been arrested between his first and second offenses has perhaps demonstrated, more than one who has had no intervening arrest, that he is unlikely to mend his ways." *United States v. Springs*, 17 F.3d 192, 196 (7th Cir. 1994) (citation omitted). Collectively, this context suggests that neither subtle interactions with law enforcement—such as

traffic stops—nor more aggressive actions—such as an indictment or conviction or sentencing—are the focus of the Guidelines' approach toward "prior sentence[s] of imprisonment."

Decisions in this circuit interpreting § 4A1.2(a)(2) confirm this understanding. Our most fulsome discussion on the matter, *United States v. Powell*, considered the propriety of a career-offender enhancement that turned on two prior crimes of violence sentenced on the same day. 798 F.3d at 437. The lone event separating the offenses was that "Powell was served with a summons and given notice of" a pending aggravated assault charge for the first offense. *Id.* Dictionary definitions, we observed, describe an arrest as *either* a "seizure or forcible restraint" or "taking or keeping of a person in custody by legal authority." *Id.* at 440 (citing *Black's Law Dictionary* at 130 (10th ed. 2014)). Drawing from that definitional background, we held that conflating an "arrest" with the issuance of a summons "flies in the face of common understanding and stretches the word's meaning too far." *Id.* So the issuance of a written command (there, in the form of a summons) to Powell did not amount to an arrest, even under the common law definition, *see Torres*, 141 S. Ct. at 995. Albeit in dicta, we voiced agreement with the Ninth Circuit's view that a traffic stop or other "momentary detention" does not constitute an arrest for purposes of § 4A1.2(a)(2). *Powell*, 798 F.3d at 438–40. Other cases, admittedly without much discussion, have generally recognized the same: an intervening arrest occurs when a defendant commits an offense, is temporarily placed in the custody of police for that crime, and then commits another offense upon release. *See United States v. Curb*, 625 F.3d 968, 971–72 (6th Cir. 2010); *see also United States v. Mosley*, 635 F.3d 859, 864–65 (6th Cir. 2011).

C. Reading "intervening arrest" to mean (1) a custodial arrest (2) that occurs at some point before the commission of a second offense all but answers the issue in this appeal. Recall Rogers's criminal history. Having been caught in January 2017 possessing methamphetamine in a hotel room, Rogers was placed in police custody and held for an indefinite period (perhaps more than 60 days, *see* Ky. R. Crim. P. 5.22(3)). Even under the modern view of the term "arrest," that manner of detention plainly qualifies. And that arrest, critically, occurred before the March 2018 traffic stop where Rogers was found possessing methamphetamine. In other

words, an intervening arrest separated the two crimes, meaning the sentences Rogers received for each offense count separately under the Guidelines.

Rogers resists this conclusion. He begins by turning our attention away from the "intervening arrest" language to the fact that the Guidelines uses the term "offense" as the starting point for determining criminal history. But this misses the point. All agree that Rogers committed both the motel and the traffic stop offenses. Today's question is how to count the sentences that resulted from those offenses, when those sentences were issued on the same day. Section 4A1.2(a)(2) provides the answer—the intervening arrest rule—meaning our focus must be on the term "arrest."

Rogers next maintains that, for purposes of § 4A1.2(a)(2), an arrest requires that a defendant be put on notice of an indictment for activity for which he was taken into custody. In other words, a suspect who is placed in custody and then later released for a failure to indict is not deemed to have been under "arrest." Only post-indictment arrests or arrests where the defendant is on notice of a pending indictment, says Rogers, fulfill the "purposes" of the Guidelines' criminal history provisions to combat recidivism. But arguments concerning a law's purpose, "even the most formidable" ones, cannot overcome what the text commands—in this case, that an arrest (not an indictment) is the touchstone for determining what constitutes a prior sentence. *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012). On that score, it bears noting, it is difficult to reconcile a rule that focuses on the role of an indictment with the Guidelines' text. Remember, § 4A1.2(a)(2) dictates that the "intervening arrest" principle governs even with respect to two offenses that were contained on the "same charging instrument." A proposed rule that focuses on the timing of the indictment for the first offense would trivialize the Guidelines reference to the "same charging instrument." *See Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 209 (1997) (holding that laws "must be interpreted, if possible, to give each word some operative effect"). It would also be at odds with the common understanding of custodial arrest, which ordinarily can occur before the issuance of a charge. *See, e.g.*, 18 U.S.C. § 3161(b) (requiring that an information or indictment be filed within thirty days from the date on which such individual was arrested).

Rogers's position also minimizes the Guidelines' intervening arrest rule to just one purpose: to put a defendant on adequate notice that he may be subject to heightened penalties for his criminal history. But just as legislation is the "art of compromise," with "no statute yet known 'pursu[ing] its stated purpose at all costs,'" *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (quoting *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987)), so too with the Guidelines, *see* Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L. Rev. 1, 2 (1988). And, as discussed, the Guidelines' text, by delineating offenses based on an "intervening arrest," opts for a middle ground between two poles: no notice of the offense to the defendant on the one hand (e.g., counting from the time of the offense or from a traffic stop), and very robust notice on the other (e.g., counting from the indictment, conviction, or sentencing). So even were we to agree with Rogers's policy outlook, "[o]ur task is to apply the text, not to improve upon it." *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989). His arguments may find a better home with the Sentencing Commission or Congress.

Rogers also raises federalism-based concerns. To his mind, allowing Kentucky offenders to be indicted after charges initially were not pursued is inconsistent with the practice in jurisdictions with stricter speedy trial laws, highlighting the notice issues inherent in Kentucky's approach. Perhaps Rogers's critique is warranted. But like his other policy arguments, Rogers's federalism-based interpretation finds no place in the text of the Guidelines. And short of cases raising constitutional concerns, we do not use the "federalism-related consequences of" a law's plain meaning, as important as they may be, to "reason[] backwards" to alter the law's otherwise clear text. *Bond v. United States*, 572 U.S. 844, 870 (2014) (Scalia, J., concurring). Nor, in any event, do we see any federalism concerns at play here. The career-offender provision is based on a defendant's underlying offenses. Whether a particular conviction took longer to materialize in a particular state does not create "unwarranted sentence disparities among defendants with similar records" when the records of offense remain similar. 18 U.S.C. § 3553(a)(6).

In Rogers's reply brief, he suggests a variation on his proposed rule—that a "defendant is not 'arrest[ed]' without a reasonably timed indictment providing the defendant notice that he is going to be held accountable for his interaction with law enforcement." *See* Appellant's Reply

Br. at 1. But this reasonably timed indictment rule, while creative, is also flawed. For one, the rule is inconsistent with the Guidelines. For another, it seemingly would put us in tension with our sister circuits, which tend to focus on the moment of custodial arrest for the offense, not subsequent events in the prosecution. *See, e.g.*, *Wright*, 862 F.3d at 1282 (looking at whether "someone has been seized and taken into custody, however briefly" to determine whether there has been an intervening arrest). Nor does the rule seem warranted on its own merits. In terms of notice, a custodial arrest is a stark indication that one's criminal history is subject to change. The Constitution, recall, requires that "persons arrested without a warrant [be] 'promptly' . . . brought before a neutral magistrate for a judicial determination of probable cause," *County of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991) (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)), the same standard of proof needed to indict, *see United States v. Calandra*, 414 U.S. 338, 343 (1974).

At oral argument, Rogers emphasized that we should interpret "arrest" in line with the Speedy Trial Act. In that context, courts have held that an individual who is "promptly released from federal custody without the Government filing formal charges" is not deemed to be arrested within the meaning of § 3161(b) of the Speedy Trial Act. *See, e.g.*, *United States v. Bloom*, 865 F.2d 485, 490 (2d Cir. 1989). But the Guidelines are our focus here. And we cannot import the meaning of a distinct law—particularly one as "technical . . . [and] rigid and arbitrary" as the Speedy Trial Act—into § 4A1.2(a)(2) without any textual basis. *United States v. Harris*, 12 F.3d 735, 736 (7th Cir. 1994).

As an interpretive rule of last resort, *see Biden v. Nebraska*, 143 S. Ct. 2355, 2376 (2023) (Barrett, J., concurring), Rogers urges us to apply the rule of lenity to adopt his favored interpretation of the intervening arrest rule. In practice, we deploy the rule only when, "after seizing everything from which aid can be derived," there remains "grievous ambiguity." *Pugin v. Garland*, 143 S. Ct. 1833, 1843 (2023) (citations omitted). And there is no ambiguity at play here, let alone ambiguity at a level that leaves grave doubt over the term's meaning. Even among the circuits that have departed from the common law understanding of an intervening arrest, each has done so understanding that the Guidelines' text plainly speaks to custodial arrests. *See Leal-Felix*, 665 F.3d at 1038–39 (majority opinion); *Wright*, 862 F.3d at 1281–83; *Ley*, 876 F.3d at 107–09. As the traditional tools of statutory interpretation do not leave us

guessing as to the meaning of intervening arrest and its application to Rogers, the rule of lenity is a poor fit here. *See Shular v. United States*, 140 S. Ct. 779, 787 (2020).

\* \* \* \* \*

We affirm the judgment of the district court.